### KLOTZ et al. v. UNITED STATES.
#### No. M–212.

Court of Claims.
Jan. 14, 1935.

Allen G. Gartner, of Washington, D. C., for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

This is a suit for the recovery of income taxes for the years 1917 to 1921 in the total amount of $154,271.74 in the case of Georges Klotz and of $97,237.65 in the case of Henri Klotz. The claims of both plaintiffs are embodied in one petition. The facts are somewhat complicated, due to the various adjustments which were made in the accounts of the several individuals involved, but facts necessary to an understanding of the issue presented are relatively simple, and may be stated as follows:

Plaintiffs are citizens and residents of France. During the period involved in this proceeding, they were members of a partnership which carried on business in the United States. The manager of the partnership filed federal income tax returns for the partnership and the plaintiffs, reporting therein one-half of the net income of the partnership as allocable to each of the plaintiffs. As a result of an investigation by revenue agents in 1921, certain changes were recommended in the amount of income reported. Early in 1922 certain certified public accountants in New York City were employed in connection with the tax liability of the partnership. In such capacity they represented not only plaintiffs, but also their mother, Victorine Klotz, who was also a member of the partnership. Before the Commissioner of Internal Revenue had made a final determination of plaintiffs' tax liability as a result of his agents' investigation, plaintiffs' representatives filed a protest or appeal in which they contended that the allocation of income of the partnership on a fifty-fifty basis between plaintiffs as shown in their returns was incorrect, that there were four partners in the partnership holding the following interests: Victorine Klotz, 44 per cent.; Georges Klotz (plaintiff), 22 per cent.; Henri Klotz (plaintiff), 22 per cent.; and Emile Utard (manager of the partnership), 12 per cent.—and that the income of the partnership should accordingly be allocated on that basis.

After various conferences, plaintiffs' contention with respect to the interests in the partnership was sustained by the Commissioner during the early part of 1924. As a result of that determination it was found that substantial refunds were due to plaintiffs and that additional tax was due from Victorine Klotz since plaintiffs had theretofore reported all of the partnership income, whereas 44 per cent. should have been reported by Victorine Klotz. At that time Victorine Klotz had no assets in the United States, and her interest in the partnership ceased June 1, 1921. The difficulties which might be encountered in collecting the additional tax from Victorine Klotz were thus apparent. Plaintiffs agreed, however, that they would see to it that appropriate returns were filed on behalf of their mother and her tax paid from the assets of the partnership in New York City.

Returns were accordingly filed on behalf of Victorine Klotz, additional taxes were assessed against her, and refunds were determined in favor of plaintiffs. Considerable discussion then arose as to how the additional tax was to be collected and the refunds paid; one suggestion being that a check would be given by plaintiffs for their mother's tax, and refunds to which plaintiffs were entitled would be made to them. The Commissioner, however, apparently preferred to have the matter handled through an offset of the refunds against the additional tax. Whether the motive which actuated the Commissioner in his desire to have the transaction settled in the foregoing manner was prompted by lack of faith in the security of the payment to be tendered, or whether it was in an effort to reduce the amount of interest to be paid on the refunds through the treatment by them, in so far as necessary to satisfy the additional tax, as credits rather than as refunds through direct payment to plaintiffs, or whether some other end to be served was the motivating cause, is not clear from the record, nor do we consider it material. Suffice it to say that we are satisfied from the record, and we have found as a fact, that plaintiffs' authorized representatives consented to the application of the plaintiffs' refunds, to the extent necessary, in satisfaction of their mother's tax liability. It would serve no useful purpose to go into details of the evidence supporting such a finding of fact or why the same conclusion applied in the settlement of the years 1917 to 1920 as the other years involved. We are satisfied it is abundantly established from the record that an agreement was

reached that such an application should be made.

During 1924 and 1925 a part of the refunds due plaintiffs, sufficient in amount to satisfy the tax liability of Victorine Klotz, was applied in full satisfaction of the latter's tax liability, and the balance of the refunds was duly paid to plaintiffs. A controversy then arose as to the interest to which plaintiffs were entitled on the portion of their refunds which was credited against the taxes of Victorine Klotz. The Commissioner at first took the position that such application of the refunds constituted a credit within the meaning of the applicable statute, and therefore no interest was allowable. After various briefs were filed, conferences held, and extended consideration of the question, interest was finally allowed on the refunds as if they had been paid directly to plaintiffs; the last payment having been made October 22, 1927. Some contention is advanced by plaintiffs to the effect that during the last-named controversy they were not only seeking to obtain the interest, but also the principal upon which the interest would be computed. We can find no support for such a position in the documents which were filed and in the record as presented. It may well be that plaintiffs would have preferred to have had the matter handled differently when the refunds were applied against the additional tax, but whatever suggestion was made in that connection was in the nature of a means to the end of securing the full interest allowance and not for the purpose of recovering the principal amount which had been credited. In other words, from the time such offset was made in 1924 and 1925, until 1930, no suggestion was made that they were questioning the validity of the application of portions of their refunds in satisfaction of their mother's tax or that they were seeking to have such principal sums refunded to them. It was not until January, 1930, that plaintiffs filed claims for refund of the foregoing principal sums which had been applied as credits or offsets against the tax of Victorine Klotz. The Commissioner rejected the claims August 27, 1930.

This suit, which was filed June 22, 1931, is not based on the rejection of the foregoing claims for refund, but it is predicated on an account stated theory for the recovery of the amounts set out in the claim for refund. In our opinion, however, the basis is immaterial; in no view of the case are plaintiffs entitled to recover. As far as tax liability is concerned, the correct tax liability of all parties concerned has been paid; that is, the tax liability of Victorine Klotz has been satisfied and the full overpayments of plaintiffs have been paid with interest. In substance, the only contention advanced by plaintiffs is that they are separate and distinct taxpayers from their mother and that therefore the application of a part of their overpayment in satisfaction of their mother's tax was illegal, and accordingly such amount should be returned to them.

It requires no citation of authority to support the proposition that the several individuals involved are separate and distinct taxpayers. It is likewise well settled, however, that one taxpayer may consent to have a refund due him used in satisfaction of a tax due from another taxpayer. David Daube v. United States, 59 F.(2d) 842, 1 F.Supp. 771, 75 Ct. Cl. 633, John Muir v. United States (Ct. Cl.) 3 F.Supp. 619, and Madiera Embroidery Co. v. United States (Ct. Cl.) 5 F.Supp. 420. And the latter is precisely the situation in the case at bar, and every consideration, both in law and in equity, warrants its application to the end that recovery may be denied. The overpayments arose by reason of the fact that plaintiffs erroneously reported their income in the first instance. When the Commissioner acquiesced in their contention that the error should be corrected, they agreed a portion of their refunds should be used to pay the tax of their mother, another partner, who had not reported any income from the partnership, and where plaintiffs were securing refunds on account of their error in including that income in their return. The same individuals represented all parties before the Commissioner, and apparently all funds of the plaintiffs and their mother, coming to them from the partnership, were handled at a common source. It is perfectly logical therefore why their representatives should agree and did agree that the transaction should be carried out in the manner it was carried out by the Commissioner. At that time the mother had no assets in this country from which collection could be had. The statute has now apparently run on the collection of the tax from the mother, even if assets could be found. The application of the refunds was not only legal under the agreement, but also it would be inequitable and unconscionable to permit recovery under such circumstances.

The petition must be dismissed. It is so ordered.

BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges, concur.