LATTIMORE v. UNITED STATES, and four
other cases.

Nos. J–592, K–381, K–382, K–489, K–490.
Court of Claims.
Dec. 2, 1935.

904

908

< >

Allen H. Gardner and Morris, KixMiller & Baar, all of Washington, D. C., for plaintiffs.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

At the suggestion of the plaintiffs, these five cases—Nos. J–592, K–381, K–382, K–489, and K–490—have been ordered consolidated for submission to the court. They will be considered in one opinion, but a separate judgment will be entered in each case.

The record in these cases shows that there were two partnerships in existence during the period involved, namely, Double Seal Ring sales partnership and the Double Seal Ring factory partnership. The sales partnership was a selling agency for the rings manufactured by the factory partnership.

The questions which arise in these cases involve only the factory partnership.

Each of the plaintiffs had an interest either as a partner, or as the wife or husband of a partner, in the income of a partnership under the community property laws of the state of Texas. In each case the plaintiff seeks to recover an alleged overpayment of income taxes for one or more of the years 1918, 1919, and 1920.

The findings of fact are necessarily voluminous and will only be referred to as the questions which arise from them are discussed and when necessary to clarify the issue involved. A summary repetition would attain no end and only burden the opinion.

(1) The first question is whether the Commissioner of Internal Revenue erred in increasing the income reported by the factory partnership by the amount of excise taxes paid by the partnership during the year 1919. It appears that in the year 1919 an excise tax of $16,474.11 was paid on the manufacture and sale of piston rings. However, in 1921 the Commissioner of Internal Revenue decided these piston rings were not automobile accessories and therefore refunded to the factory partnership the full amount collected for that year. Having refunded this amount, the Commissioner in his final determination of the net income of the factory partnership for 1919 increased the net income by the amount refunded on the ground that the partnership had taken that amount as a deduction in that year and as the amount had been returned to it the deduction was improper and not allowable. It is admitted that if the partnership took the deduction in its return the increase in net income made by the Commissioner is correct. This resolves itself into a question of fact. The plaintiffs have failed to show affirmatively that the deduction was not taken. Either the partnership or the individual partners had to pay the money to the government and, without evidence to the contrary, it is a fair assumption that the factory partnership made the payments and charged them to some account and the income of the partnership was affected to that extent. When the amount was returned as having been erroneously collected, the income for that year was increased accordingly by this sum. The Commissioner made the decision that a deduction had been taken in 1919. The burden of proving by the greater weight of the evidence that no deduction had been taken was on the plaintiffs. The evidence falls far short of overcoming the presumption of correctness of the findings of the Commissioner. The burden of proof has not been sustained by the plaintiffs. No recovery can be had on this item.

(2) The second question involves the value of certain castings and piston rings included in the closing inventory for the year 1920. A claim is made by the plaintiffs that the piston rings were of no value at the close of the year 1920.

The returns of the partnership show that it figured its inventory on finished articles at cost. Under the statute, section 203 of the Revenue Act of 1918, 40 Stat. 1060, and the regulations promulgated thereunder the partnership could elect to value its inventory at either cost or market whichever was lower. There was no change of basis by the Commissioner. There was no sale or offering for sale of any of the articles at less than cost within 30 days after the inventory was taken as provided by article 1582 of Regulations 45 as amended by Treasury Decision 3296.

The deduction now claimed constitutes the stock in trade at the end of the year 1920. The closing inventory for the year 1920 in the original income tax return for that year shows:

| | |
|---|---|
| Raw material | $ 43,447.32 |
| Finished products (rings) | 176,236.85 |
| Supplies | 9,798.82 |
| Total | 229,480.99 |

The Commissioner used these figures in arriving at the final determination. The partnership used these inventory values in 1921. In July, 1922, the partnership combined with a company known as the Double Seal Piston Company and their assets were sold to a corporation known as the Double Seal Ring & Piston Company. Among the assets transferred to this company are the piston rings sought to be charged off. These rings, less whatever had been sold in the meantime, were carried in the inventory of the corporation until it was dissolved in 1925. It was in that year the rings were ascertained to have no value, several years after the partnership had parted with its interest to the corporation. These rings were not only included in the inventory at cost, but, as shown above, were used on that same basis when the factory partnership combined with the sales partnership in 1921 and the same inventory, less sales, was valued on the same basis when the consolidated partnership was succeeded by a corporation in 1922. The Commissioner valued them on that basis, and we can find no reason for disturbing his decision.

(3) The third issue is a claim on account of defective castings which were on hand when the closing inventory for 1920 was made. The partnership made a claim against the foundry company which furnished these castings, and it was determined that the partnership had on hand at December 31, 1920, worthless castings which had cost it $13,486.63. The foundry company reimbursed the partnership on account of the loss to the extent of $7,500.

The partnership had included all of its castings in its closing inventory for 1920 at

their full cost, and, after the payment of $7,500 had been made, a controversy arose between the plaintiffs and the Commissioner as to what adjustment should be made on account of those which were found worthless. In his final determination the Commissioner made a net reduction in income of $7,500 because of the item. The plaintiffs insist that the entire amount of defective material in the sum of $13,486.63 should have been deducted from the inventory and claim that, as only $7,500 has been allowed, a further allowance of $5,968.63 should be made. This is really a question of loss sustained by the partnership for which it has been partially compensated and not an inventory question in the usual sense. The total claim of the partnership against the foundry company was $13,468.63 for defective castings. The foundry company paid $7,500 of this loss and the Commissioner allowed a deduction in that amount. As a matter of fact, only the difference between the amount of the claim and the amount paid by the foundry company was a loss, and the reduction in income should have been only in that amount, namely, $5,968.63. The plaintiffs have gained an advantage by the decision of the Commissioner. No recovery can be had on this item.

■ (4) The fourth and last issue with respect to the factory partnership income for 1920 is a deduction claimed on account of an alleged abandonment of a building. This building was erected in 1919 and equipped with expensive machinery in that year and the following year. It was used in 1920 and carried on the books of the company as a live asset. There was no change which suddenly terminated the usefulness of the building, nor was the building discarded permanently from use in the business. Due to the depression in business, it was not used to its full capacity, but it was used. The record shows that the building was carried as an asset on the books of the partnership and its successors until 1925. It was considered an asset of substantial value in 1921 when the factory partnership consolidated with the sales partnership, and when the partnership sold to the corporation in 1922. At least through 1922 depreciation was taken on this building and presumably deducted from gross income in determining taxable net income for 1921 and 1922. As a matter of fact, the transfer to the corporation shows the buildings to be valued higher than the

returns show the value in 1921. Where there is an increase of value, there can be no obsolescence. There is some evidence in the record that when the corporation in 1922 was contemplating a bond issue the building was appraised at a value of its cost less depreciation. The evidence of abandonment and heavy depreciation in 1920 of this building is supplied by an interested witness and is in direct variance with the documentary evidence supplied by the returns and statements of the partners. We can find no merit in this contention. Recovery cannot be had on this item.

A. The next question relates to the individual case of the plaintiff, O. S. Lattimore (No. J–592). The facts have been most minutely set out in the special findings of fact, and we feel it is unnecessary and burdensome to this opinion to again state them.

■ Lattimore for the year 1918 filed a joint tentative original amended income tax return for himself and his wife, and the tax shown on this return was paid. Later he filed a separate individual return showing a much smaller tax due, and subsequently he filed a claim for refund. The main contention made in this case is that the Commissioner applied a part of the amount paid by Lattimore in the joint return to the individual tax of the wife after the husband and wife had made separate returns, and Lattimore contends that the overpayment due to him, as found by the Commissioner, could not and should not be applied to the liability of his wife. We can find no merit in this contention. The overpayment arose due to the fact that there had been a joint return made and the tax liability of both husband and wife was reported and paid, but the assessment was made in the name of the husband and thereafter separate returns were filed and the liabilities of the two parties were shown separately. This, of course, gave an overpayment in favor of the husband, in whose name the assessment on the joint return had been made. The Commissioner, after several audits and after taking into consideration the claims of the husband, arrived at the conclusion that the payment made by the husband on the joint return was made from community funds, and that therefore, when the joint return was split up into two separate individual returns, a part of the payment made by the husband belonged to the wife, and he applied a part of the tax paid by the husband to the payment of the tax.

found to be due against the wife on her individual return. The husband recognized that the wife was entitled to a part of the amount paid when he filed a claim for refund and credit, and in fact made such allocation to his wife. A similar situation was considered in Benjamin Clayton v. United States, 44 F.(2d) 427, 432, 70 Ct.Cl. 740, certiorari denied 283 U.S. 860, 51 S. Ct. 654, 75 L.Ed. 1466, wherein we said:

"When the original joint returns of plaintiff and his wife were made and the tax shown thereon was paid, a part of the tax was paid on the community income belonging to the wife and out of community funds belonging to her. To the extent, therefore, of the payment of the original tax on the entire income shown on these returns which should have been paid by the wife, it was her tax paid out of community funds. When the Commissioner of Internal Revenue, upon the claim of plaintiff and his wife, determined and computed the income and the tax separately on the community property basis and allocated a portion of the tax returned and paid upon the joint returns to the tax due by the wife upon that portion of the community income allocated to her, he was in contemplation of law using her money which had been paid on the joint return out of undivided community funds in respect of the tax for which she would have been liable had separate returns been filed in the first instance. To the extent, therefore, of the tax liability of the husband and the wife when the income shown on the joint returns was divided between them, there was, in reality, no overpayment. But, for administrative purposes, the Commissioner correctly treated the excess of the tax shown and assessed on the joint return over that due by the plaintiff on a separate basis as an overassessment, since he signed the return, and his name only appeared on the assessment list. The community fund is an undivided fund in which the husband and the wife each have a one-half interest."

In our opinion, the credits were valid and proper. There can be no recovery on this item.

(a) There is another issue in the individual claim of Mr. Lattimore which arose from the application of the four credits of the husband against the liability of the wife, the plaintiff contending that at the time of their application the statute of limitations had run on the collection of the assessments against which they were applied. Three of the assessments were $443.22 against Mrs. Lattimore for 1918, $709.54 against Mrs. Lattimore for 1919, and $709.54 against O. S. Lattimore for 1918, and it is admitted that these assessments were timely made in August 1923. Upon the making of the assessment the Commissioner sought to make collection, which likewise was at a time when the statute had not run on collection, but the authorized representative of the Lattimores strenuously objected to the collection and urged the Commissioner to withhold collection, pending adjustment of the controversy between them and the Commissioner. The Commissioner yielded to their request and postponed collection until August 19, 1926, which was after the statute had run on collection. In the meantime, further claims for refund and protests were filed, conferences were held and consideration was given to the settlement of the controversy, and the matter was not finally disposed of until 1926, when the statute had run on collection. The procedure carried out was that requested by plaintiffs, and they cannot now be heard to say that the collection was not timely. R. H. Stearns Company v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647.

(b) The fourth assessment of $885.60 against Mrs. Lattimore for 1918 presents a somewhat different situation from the three which we have just discussed, though the question raised is that the statute had run on its assessment and collection when made, and that accordingly the credit application of August 19, 1926, is void. The assessment was made after the issuance of a deficiency notice on January 6, 1926, at which time the parties are agreed that the statute had run. However, within sixty days after the receipt of the deficiency notice, Mrs. O. S. Lattimore filed a petition with the United States Board of Tax Appeals in which she appealed from the determination of the Commissioner but did not raise any question as to the running of the statute of limitations on assessment. Thereafter, the parties filed a stipulation with the Board in which it was agreed that there was a deficiency for 1918 of the amount shown in the Commissioner's deficiency notice and the Board entered an order of redetermination in accordance with that stipulation. The Commissioner assessed the deficiency in July, 1926, and it was satisfied August

19, 1926, by a credit from the overpayment in favor of O. S. Lattimore as heretofore shown.

The defendant contends that since Mrs. Lattimore did not question the timeliness of the deficiency notice in her appeal to the Board she cannot now collaterally attack the determination of the Board by raising that question. We do not think this position is meritorious. An issue as to the statute of limitations is jurisdictional and of course may be raised at any time in a proceeding which is timely instituted. The petition to the Board was filed February 15, 1926, which was prior to the effective date of the passage of the Revenue Act of 1926 (February 26, 1926), and the decision of the Board was not made until April 30, 1926, which was after such date. In a petition filed by a taxpayer and disposed of by the Board at such times, section 283 (b) of the Revenue Act of 1926, 44 Stat. 63, permits the payment of the deficiency and the institution of suit without regard to what question was raised before the Board. Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918. It accordingly follows that since the assessment of $863.31 was outlawed when made, its attempted collection, with interest of $22.29, by credit from a part of O. S. Lattimore's overpayment was of no force and effect and that plaintiff (O. S. Lattimore) is entitled to judgment in that amount.

B. The final question relates to the individual liability of Dora Holland for 1920. This whole claim is based on the alleged fact that this plaintiff had a community property interest with her husband in the partnership for 1920 of only 28 per cent. whereas the Commissioner has taxed her on the basis of an interest of 40 per cent. The difference is an interest which, it is alleged, plaintiff's husband, Kirk D. Holland, acquired as his separate property after the husband and wife moved to Illinois, where community property laws are not in effect. The records show that the wife, Dora Holland, possessed a 40 per cent. interest in the factory partnership during 1920, and we have so found as a fact. What the interests of the respective parties were in the factory partnership is a question of fact, and the evidence in the case shows that when the claim first arose affidavits were filed by both the husband and wife setting forth that the wife's interest was 40 per cent. and that this was community property. The Commissioner has found that the wife's interest was that as stated in the affidavits. The only evidence to overcome this finding is the subsequent testimony of the husband given many years after the filing of the affidavits. A change of an interest in ownership of the character contended for would result in a refund to the wife and an additional assessment to the husband which apparently cannot now be collected. We are unwilling to change the determination of the Commissioner which was based on both the affidavit of the husband and the wife solely on the testimony of the husband which is directly in contradiction with these affidavits made many years before and when the husband is not only an interested party but also the tax consultant and the only witness for the plaintiff in this case. There can be no recovery on this item.

C and D. The cases of Charles R. Keith, No. K-382, and Russell C. Lewis, K-490, depend entirely upon the recovery on the claims of the factory partnership. As we have found that these claims are not meritorious and no recovery can be had on them, judgments will be entered against the plaintiffs in both of these cases.

A judgment will be entered for O. S. Lattimore, No. J-592, in the sum of $885.-60 with interest at 6 per cent. from April 23, 1920.

The petitions in the cases of Mrs. O. S. Lattimore, K-381, Charles R. Keith, K-382, Dora Holland, K-489, and Russell C. Lewis, K-490, are dismissed. It is so ordered.