## MARSHALL v. UNITED STATES.

### No. 43286.

Court of Claims.

March 6, 1939.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit to recover an alleged overpayment of income taxes for the year 1930.

It appears from the findings that in 1927 plaintiff and her husband, being then, and at all times involved in the suit, citizens of the State of California, entered into an agreement with reference to existing property rights between them providing in substance that all property acquired by either of the parties after that date should be the sole and separate property of the party so acquiring the same, free and clear of any and all claims of the other, either community or otherwise.

In filing a return for her income tax for the year 1930, the plaintiff appears to have assumed that this agreement was in force and reported that her personal net income was $283,821.44 and her tax liability $55,-442.91, which was duly paid. Her husband also filed a return of his personal income and tax liability for the same year in accordance with the agreement. The Commissioner of Internal Revenue, however, after examining these returns, disregarded the agreement and determined that the income of plaintiff and her husband for Federal tax purposes should be allocated according to the community property laws of the State of California, that is, one-half the income earned by each spouse should be attributed to the other. Accordingly, an overassessment was computed in favor of the plaintiff and a deficiency found against her husband. Notice and demand for the payment of this deficiency was made upon the husband but no part of the amount so assessed has ever been paid. The Bureau, instead of following its original determination with reference to the taxes of the plaintiff, canceled the overassessment and has collected from plaintiff the amount of tax liability shown by her return.

The plaintiff contends that the action of the Commissioner together with subsequent proceedings on the part of the Bureau of Internal Revenue constituted an account stated in her favor upon the basis of the original determination of plaintiff's tax by the Commissioner. A claim for refund of the sum collected was duly filed and this suit begun to recover the amount thereof.

The plaintiff also insists that her income tax was correctly determined by the Com-

A. E. James, of Washington, D. C., for plaintiff.

J. H. Sheppard, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

missioner in the first instance and that a refund is due her in the amount of the overassessment as computed.

In support of her contention that an account stated was rendered the plaintiff relies on a number of facts and circumstances. Those which have been specially urged as important will be considered.

On June 13, 1933, the Bureau, pursuant to the determination that the income of plaintiff and her husband should be allocated according to the community property laws of the State of California, telegraphed the plaintiff to "file claim immediately with collector" for $23,275.58 year 1930 "basis transfer one-half community income to husband's return." In accordance with this direction, the plaintiff filed a claim for refund for the year 1930 in the amount above stated and later the Commissioner prepared a certificate of overassessment in favor of the plaintiff for $23,275.58, but this certificate was subsequently canceled by the Commissioner without having been forwarded to the collector or delivered to the plaintiff. The record does not show the date of preparation or the date of cancellation.

Still later, and on May 14, 1934, the Bureau wrote to plaintiff in substance that it had under consideration her income tax return for the year 1930 and that "on the basis of the information now on file with your return, it is the opinion of this office that your taxable income as reported should be adjusted in accordance with the recommendations contained in the revenue agent's report," that is, one-half of the income earned by each spouse should be attributed to the other. The communication further stated that a case involving a similar issue was pending in the United States Circuit Court of Appeals and that it was deemed advisable to defer action until a decision had been rendered by the court on the question. The attention of the taxpayer was called to the fact that the statutory period within which final notice of deficiency might be issued would expire in the near future and the taxpayer was advised that she had the right to make a written application for the execution of a consent extending the period of limitation for assessment. This resulted in a consent to extension of the period of limitation being executed by the plaintiff and the Bureau of Internal Revenue. The same kind of a notice was sent to the plaintiff's husband and the same action taken. Later

and on May 25, 1934, the representative of the plaintiff telegraphed the Deputy Commissioner of Internal Revenue that plaintiff and her husband would be willing to close cases by allowing returns to remain as filed disallowing wife's claim for refund, or on a community basis allowing wife's refund to pay husband's deficiency provided entire deficiency was eliminated by such procedure. The Bureau replied that the closing of the cases must be deferred pending action of the Bureau in regard to a case in the Circuit Court of Appeals. On August 24, 1934, the representative of the plaintiff wrote the Commissioner of Internal Revenue with reference to the refund claim of the plaintiff asking that he be advised when he might expect some action on the claim.

There was further correspondence between the plaintiff's representative and the Bureau with reference to the claim of the plaintiff for refund which the plaintiff sought to have allowed and paid, the Bureau on its part giving various reasons for not complying with the plaintiff's request. Finally, on January 3, 1936, the Commissioner sent a communication to plaintiff's attorney stating that the overassessment would not be released as the deficiency assessed against Mr. Morosco had not been paid, and that—

"It is the position of this office that in cases involving the transfer of income from the return of one taxpayer to that of another, the amount of the overassessment disclosed may not be refunded to the detriment of the government."

In the view of the court, there is nothing in this correspondence material to the determination of the case except that the final communication was in effect a refusal to allow the claim for refund.

■ We think the evidence fails to disclose the necessary elements of an account stated. An "account stated" must be or contain a statement of the balance of the account, that is, a balance must be struck and an account rendered to the other party for that balance. 1 C.J.S., Account Stated, § 22, p. 703. No account of any kind was ever rendered to the plaintiff. Under a misapprehension of the law, the Commissioner originally held that there had been an overassessment of plaintiff's taxes and prepared a certificate to that effect. This certificate, however, was withheld in the Bureau and subsequently canceled. There was nothing in this action that shows that

plaintiff was presented with an account showing a balance due her. On the contrary, the withholding of the certificate and its subsequent cancellation showed that the Bureau had not definitely determined what should be done with reference to plaintiff's taxes. The Commissioner also sent a telegram to plaintiff directing her to "file immediately a claim for refund." But this was not a promise to pay the claim, it was merely advice with reference to the protection of her rights in case it should eventually be found she was entitled to the refund. The action was commendable on the part of the Commissioner as taxpayers often fail to file their claims in time and by reason thereof find themselves barred by the statute of limitations. A promise to refund a definite sum or a statement that a definite sum is due the other party has sometimes been held to constitute an account stated, but here there was no promise either of allowance or payment, or even an admission that a definite sum was due. The Commissioner's action in making a preliminary examination of the account, his erroneous conclusion as to the amount of taxes due, and his direction to file a refund claim taken singly or considered together, did not bind the defendant to allow and pay plaintiff's claim.

In the brief of counsel for plaintiff many cases are cited, none of which in our opinion support the contention made. In Wood v. United States, 17 F.Supp. 521, 84 Ct.Cl. 367, the Commissioner not only determined an overpayment but sent a certificate of overassessment to the taxpayer in which a balance of the account was struck and shown to be due plaintiff. The Commissioner, however, determined that this amount acknowledged to be due could not be paid for the reason that a claim for it was barred by the statute of limitations. Here a complete account was rendered, a balance struck and agreed upon by the parties. The court held that the error of the Commissioner with reference to the effect of the statute of limitations did not prevent the plaintiff from claiming an account stated. In the case of Shipley Construction & Supply Co. v. United States, 7 F.Supp. 492, 79 Ct.Cl. 736, the plaintiff was not only advised that an audit of its income tax showed an overassessment and the amount thereof but other statements in the letter of advice were such in the opinion of the court as to imply a promise to pay the same and make it an account stated. In the case before us, there is nothing from which such a promise can be implied. On the contrary, the defendant was continually giving reasons why it would not pay the claim.

The case of Daube v. United States, 59 F.2d 842, 1 F.Supp. 771, 75 Ct.Cl. 633, affirmed 289 U.S. 367, 53 S.Ct. 597, 599, 77 L.Ed. 1261, was similar in many respects to the one at bar. In that case the Commissioner prepared a certificate of overassessment and went so far as to enter this certificate on a schedule of refunds and credits which was signed by him and issued a check in favor of the taxpayer; after which the Commissioner prepared a letter stating the amount of the overassessment which, with the check for the amount thereof, was sent to the collector. The collector, perceiving that an error had been made, did not forward the check or the letter to plaintiff but returned the check to the Commissioner. The taxpayer claimed that this action of the Commissioner constituted an account stated. The Supreme Court said "there had been messages back and forth between the officers and branches of an administrative bureau," as there had been in the instant case, but by none of these acts had the Commissioner divested himself of control of the matter and the court held in effect that he had the right to rescind his original action. In stating the elements of an account stated this court said in the Daube case, supra, that the rule is absolute that "unless some kind of an account or statement is presented or communicated by one party to the other which shows the balance due on the accounts between the parties, there is no foundation for a claim upon an account stated." [59 F.2d 847.] In the case before us there was no such statement or communication. It is true the Bureau did direct the plaintiff to file a claim for a certain amount, but the plaintiff was not told that this amount was due her or that it would be paid. We have stated above the reasons for this direction being given. In the argument on behalf of plaintiff it is said that what was "done by the Commissioner has never been undone." The cancellation of the certificate of overassessment was sufficient abrogation of the prior action of the Commissioner if anything was necessary to set aside what had originally been done. We think, however, nothing was necessary as the defendant still retained control of the whole matter and the refusal or failure of the Bureau to pay the claim for refund was a sufficient denial of

the claim. It is immaterial that the reasons given by the Commissioner for his action were neither logical nor a correct statement of legal principles. As will be shown further on, the Commissioner erred in his construction of the California statute and he was equally unfortunate in giving the reasons for his final conclusion. But this does not affect the determination of the case which must be decided in accordance with legal principles.

In this connection the plaintiff argues that the original action of the Commissioner was presumptively correct and that in the absence of affirmative pleading the plaintiff is entitled to recover.

We know of no such rule. The final determination of the Commissioner when disputed by the taxpayer is presumed to be correct in the absence of evidence showing the contrary but that rule has no application here. The Commissioner was not bound to adhere to his original ruling if he subsequently found it was not in accordance with the law as applied to the facts in the case.

It is also argued on behalf of the plaintiff that the Commissioner was right when in the first instance he disregarded the property agreement between the plaintiff and her husband and held that for Federal income tax purposes the income of both was community property under the laws of California and that the plaintiff was only liable for taxes computed accordingly; in other words, that the overassessment of the plaintiff as originally computed by the Commissioner was correct and that plaintiff should have the amount thereof refunded. In support of this contention, counsel for plaintiff presents an elaborate discussion of both Federal and State cases in which was involved either directly or indirectly the question of the effect of agreements between husband and wife, citizens of California, providing that all property acquired by either party subsequent to the date of the agreement should be the sole and separate property of the party acquiring the same. The plaintiff takes the position that neither the California cases nor the decisions of the United States courts show that the original determination of the Commissioner was erroneous.

That this last contention on the part of plaintiff is not well founded is settled by so many and well reasoned cases it does not seem necessary to add anything to the conclusions reached therein. Moreover, an attempt to review all of the cases cited on behalf of plaintiff would unduly extend the limits of this opinion. The precise issue now raised by plaintiff was presented to the Board of Tax Appeals in the case of Howard C. Hickman v. Commissioner, 27 B.T.A. 807. In that case the Commissioner held that such agreements could not operate to prevent the allocation of one-half of the community income to each spouse for income tax purposes in a community property State. The Board of Tax Appeals reversed the holding of the Commissioner, and an appeal was taken to the Circuit Court of Appeals for the Ninth District under the title of Helvering, Commissioner, v. Hickman, 70 F.2d 985, 987. The decision of the Board of Tax Appeals was affirmed, following an elaborate opinion in which all of the principal cases bearing on the subject were considered, including most of those cited by plaintiff. The decisions bearing on the effect of the validity of agreements made by citizens of California with reference to community property were carefully analyzed and the opinion stated positively that—"By the law of California, as construed by her courts, the earnings of the wife never became community property if the husband and wife have agreed that they shall be and remain her separate property."

The case of Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, was examined in connection with Goodell, Collector, v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247, Hopkins, Collector, v. Bacon, 282 U. S. 122, 51 S.Ct. 62, 75 L.Ed. 249, and Bender, Collector, v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252. All were found to hold in effect that the earnings of either husband or wife were to be taxed according to the ownership of the earnings under the laws of the State of which they were residents, and Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, was distinguished. We think nothing needs to be added to the reasoning of this well considered opinion which disposes of the question now before us.

After this decision was rendered, the Bureau, having further considered the construction placed by the California courts on agreements made by husband and wife under the community property laws, announced that the Hickman case would be followed in determining the tax liability of husband and wife residing in California who

have entered into a valid agreement providing that the earnings of each should be the separate property of the earner. Proceeding accordingly, the tax against the plaintiff was reaudited, assessed, and collected from plaintiff in accordance with her return. Under the rule laid down in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, the ultimate question is whether the taxpayer has overpaid her tax. Our conclusion is that she has not.

It follows that the plaintiff's petition must be dismissed and it is so ordered.

BOOTH, Chief Justice, and WHALEY, Judge, concur.

WILLIAMS, Judge, took no part in this decision.

LITTLETON, Judge.

I am of opinion that the Commissioner's original determination computing plaintiff's income and tax for 1930 on the community property basis was correct under the California statute as amended in 1927 and United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714, and that the agreement between plaintiff and her husband was ineffectual to provide a different basis. However, since plaintiff returned income which, under the community interest, was taxable to her husband and in the absence of facts to the contrary, it must be assumed that the tax of $23,275.58 here involved was likewise paid out of the community income erroneously reported by plaintiff. The Commissioner, therefore, acted correctly when he refused to make a refund to plaintiff. Compare Benjamin Clayton v. United States, 44 F.2d 427, 70 Ct.Cl. 740; Lattimore et al. v. United States, 12 F.Supp. 895, 82 Ct.Cl. 97, 130, 131. The refund provision should have a practical application. In a case such as this we cannot assume that the tax applicable to the community income taxable to the husband, which plaintiff remitted, belonged to plaintiff any more than did the income erroneously reported by her. Therefore, a tax paid by either husband or wife out of community property follows the community income for tax purposes. The facts and circumstances involved in this case distinguish it from Krug v. United States, 18 F.Supp. 242, 84 Ct.Cl. 502. I therefore concur in the decision dismissing the petition.