*Decisions will be entered under Rule 50.*

ELLA E. HARROLD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40953. Filed June 22, 1954.

*David Livingston*, *Esq.*, for the petitioner.
*Charles W. Nyquist*, *Esq.*, for the respondent.

OPINION.

RICE, *Judge:* This proceeding involves deficiencies in income tax determined against Ella E. Harrold (hereinafter referred to as petitioner) as follows:

| Year | Deficiency |
| --- | --- |
| 1946 | $17,523.07 |
| 1947 | 8,368.90 |
| 1948 | 6,991.66 |

The sole issue to be decided is whether respondent erred in charging petitioner with one-half of the community income received by her former husband in 1946, 1947, and 1948, although her former husband reported the total of such income on his returns for these years and paid taxes thereon.

The parties have reached agreement on various other issues raised in the pleadings, and such agreement will be taken into account under a Rule 50 computation.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Petitioner is an individual residing in San Francisco, California. Her returns for the years here involved were filed with the collector of internal revenue for the first district of California.

Petitioner and Ellsworth Harrold (hereinafter referred to as Harrold) were married in 1936, and thereafter resided in California as husband and wife. During 1945 certain differences arose between petitioner and Harrold, and she commenced an action for separate maintenance. During the pendency of said proceedings, petitioner and Harrold entered into a property settlement agreement dated June 30, 1945. However, on or about September 15, 1945, they became reconciled and again lived together as husband and wife in the State of California.

The petitioner and Harrold filed separate, individual Federal income tax returns for the calendar years 1946, 1947, and 1948. Harrold was the owner of two business enterprises. In 1946 he caused them to be separately incorporated, and the shares of stock thereof issued to him. He reported the net income of said businesses, up to the time of incorporation, and the salary received thereafter from the corporations as his separate income on his returns for 1946, 1947, and 1948. He paid taxes on the income so received together with income received by him from various other sources.

In the returns filed by the petitioner for these years, none of said income or salary was reported.

A second separation occurred during March 1948, and a suit for divorce was instituted by petitioner. On February 15, 1949, an interlocutory decree of divorce was handed down by the Superior Court of the State of California in and for the County of Sacramento. In said divorce proceeding, the Superior Court confirmed the property settlement agreement dated June 30, 1945, insofar as it effected transfers of property owned by petitioner and Harrold at that time.

The Superior Court further determined that the income attributable to the personal services of Harrold subsequent to September 15, 1945 (the date of the reconciliation), was community property. An adjudication was accordingly made that a portion of the net income of

his two business enterprises prior to their incorporation, and the entire salary received by him after the incorporation constituted community property.

In determining the residual amounts of such community property to be divided between petitioner and Harrold, the Superior Court deducted from and charged the community property with various items, including living expenses and the amount of Federal and State income taxes paid by Harrold. After such deductions were made, the balance amounted to $1,734.24. One-half of this amount was awarded to petitioner as her share of the residual community property.

After the entry of the divorce decree, Harrold filed amended income tax returns for 1946, 1947, and 1948. In said returns he reported one-half of the portion of the business income, prior to incorporation, which was attributable to his personal services and one-half the salary he received after incorporation. He also filed claims for refund of a portion of the Federal income taxes paid by him for these three years, based on the theory that he had erroneously overstated his income for said years by including in his returns petitioner's community share of the income from said businesses.

During the course of the consideration of this claim for refund, the Commissioner determined that one-half of the community income during 1946, 1947, and 1948 should be added to the income reported in petitioner's returns for these years.

Allowance of the claim for refund filed by petitioner's former husband would result in overpayments for the years 1946, 1947, and 1948 in an amount in excess of the total of the deficiencies asserted against the petitioner for the same period.

Petitioner argues that, despite the decree of the Superior Court of the State of California that the income of her former husband attributable to his personal services was community property, no part of such income is now taxable to her. Her theory is that the entire tax on this income has already been paid by her former husband, the manager of the community, out of community funds. She suggests that any overpayment in his taxes, for the years in issue, resulting from the mistaken inclusion in his returns of his wife's share of such community income, be used as a setoff against her deficiencies arising out of her failure to report such community income.

Petitioner is clearly liable, under the operation of the community property laws of California, for taxes on her half of the community income earned by her former husband during the years in issue. As we stated in *Marjorie Hunt*, 22 T. C. 228:

This liability is fixed and definite. It is not a means of splitting income which may be voluntarily chosen or elected to minimize taxes. The wife may not,

at her option, return one-half of the community income; she must do so. See *Paul Cavanagh*, 42 B. T. A. 1037 (1940), affirmed on another issue 125 F. 2d 366 (C. A. 9, 1942). * * *

Petitioner refers us to two unreported cases which hold that in the community property State of California, when a husband has been adjudicated bankrupt, the Commissioner of Internal Revenue may assert the priority of his claim for taxes of the wife against the bankrupt estate which is composed solely of community property. *In the Matter of George Rogers*, (S. D. Calif., Oct. 18, 1951) 51–2 U. S. T. C. par. 9495, — A. F. T. R. —; *In the Matter of Richard Ryan*, (S. D. Calif., Dec. 13, 1949) 51–2 U. S. T. C. par. 9493, 43 A. F. T. R. 1364. Petitioner relies on dictum in these cases to the effect that a husband, as manager of the community, is personally liable for taxes on his wife's share of community income. This contention is not supported by any citations of authority either in the cases or by petitioner. It is contrary to a line of cases in which we, and other courts, have held that the powers of management conferred upon the husband by community property laws do not render him personally liable for taxes on his wife's share of the community income. *Poe* v. *Seaborn*, 282 U. S. 101 (1930); *Paul Cavanagh*, 42 B. T. A. 1037 (1940), affirmed on another issue 125 F. 2d 366 (C. A. 9, 1942); *Herbert Marshall*, 41 B. T. A. 1064 (1940). The following explanation given by this tribunal in the *Cavanagh* case, pages 1043 and 1044, adequately answers petitioner's contention:

The fact that under the California law the husband has a broad power of control does not detract from the wife's interest. This power is conferred upon him merely as the agent of the community and does not make him the owner of all the community property and income, nor negative the wife's present interest there as equal coowner. * * *

* * * * * * *

Clearly, therefore, the petitioner's wife is taxable on one-half of the community income. She is the owner thereof, although not entitled to present possession. * * *

Petitioner argues that her former husband paid taxes on her share of the community income in issue out of community property and, in effect, that any overpayment and resulting refund is community property. She, therefore, urges that the respondent must satisfy her deficiencies out of such "community property." There is no evidence that the overpayment by her former husband was made out of community property. In any event, we need not determine whether it was, or whether the subsequent dissolution of the community and distribution of its property by court decree requires that any refund now due him be treated as his separate, personal property. The decisive factor is that the wife, in a community property State, is liable for taxes on her share of community income, and she cannot require the Commis-

sioner to assert a claim for such taxes against community property rather than against her personally.

Nor do we agree with petitioner's contention that her former husband's overpayment should now be applied as a setoff against her deficiencies. Petitioner and her former husband each filed individual returns for each of the years here in issue. He paid only what he believed to be the taxes due on his income. When he discovered an overpayment to have been made, he requested that it be refunded. Even were he joined in this action, we could not direct that his overpayment be used to satisfy his former wife's tax liabilities. We have repeatedly held that each spouse is a separate and distinct taxpayer, and that we cannot require the Commissioner to credit one with a refund due the other. *Irma Jones Hunt*, 47 B. T. A. 829 (1942); *Robert C. Roebling*, 28 B. T. A. 644, 656 (1933), reversed on other grounds 78 F. 2d 444 (C. A. 3, 1935); *H. B. Perine et al.*, 22 B. T. A. 201 (1931); *Alexander Vayssie*, 8 B. T. A. 587 (1927). Petitioner cites *John W. Preston*, 21 B. T. A. 840 (1930), wherein we might appear to have made an exception to that rule. However, in that case, the two spouses were still married and living together; and we stated that it "would therefore seem proper that the husband should be allowed credit for the total amount of tax paid on the community income returned by both spouses, to the extent that such payment has not been refunded or otherwise credited." We subsequently emphasized in *H. B. Perine et al., supra*, that we could not require the respondent to do so, stating in part:

The spouses became separate and distinct taxpayers under the statute upon the filing of separate returns of the community income, and the situation is no different than it would be if the taxpayers were other than husband and wife. They being separate taxpayers, we lack authority to require the respondent to credit the proposed deficiency determined against the wife with an overpayment of tax by the husband. *Alexander Vayssie*, 8 B. T. A. 587. Cf. *John W. Preston*, 21 B. T. A. 840.

We do not consider ourselves bound by any language to the contrary as expressed by a concurring opinion in *Corinne Griffith Marshall* v. *United States*, 88 Ct. Cl. 393, 26 F. Supp. 474 (1939).

Although it may be possible that a "taxpayer may voluntarily agree to have a refund due him used in satisfaction of a tax due from another taxpayer," *Klotz* v. *United States*, 80 Ct. Cl. 514, 9 F. Supp. 618 (1935), such is not the case here. Petitioner's former husband has clearly indicated by the individual returns originally filed, his amended returns, and his request for refund that his intention was to pay taxes due only on his share of the community income.

We recognize that there is a strong, equitable consideration here in petitioner's favor. In arriving at a division of community property, the Superior Court of California charged petitioner's share with the

Federal income taxes previously paid by her former husband. But although he may now recover a refund of an amount previously credited to him in the divorce settlement, we cannot presume to adjust possible inequities therein. Any adjustment in the property settlement decree is beyond our jurisdiction, and we cannot direct what is to be done with his refund. Petitioner cites *Clayton* v. *United States*, 70 Ct. Cl. 740, 44 F. 2d 427 (1930), certiorari denied 283 U. S. 860 (1931), and *Lattimore et al.* v. *United States*, 82 Ct. Cl. 97, 12 F. Supp. 895 (1935), as supporting the allocation of an overpayment by one spouse to a deficiency of the other. However, in each of these cases, the overpayment resulted from a joint return of both spouses, thus clearly indicating that the amount originally paid with the joint return was meant to apply to the tax liabilities of each.

*Decision will be entered under Rule 50.*