Robert Templin and Olive Templin v. Commissioner.
Templin v. Commissioner
Docket No. 37251.
United States Tax Court
T.C. Memo 1954-123; 1954 Tax Ct. Memo LEXIS 123; 13 T.C.M. (CCH) 787; T.C.M. (RIA) 54229; August 13, 1954, Filed *123 An automobile dealer's franchise did not become worthless in 1948 and the cost thereof was not deductible in that year, when in 1947 the manufacturing corporation disposed of most of its operating assets and abandoned its preparations for the production of automobiles. The loss was not deferred until 1950, when a so-called successor corporation was adjudicated a bankrupt. The cost of another such franchise acquired in 1948 was deductible in that year, since it became worthless when the manufacturer terminated its productive activities, and the deduction was not postponed because reorganization proceedings in bankruptcy, begun in 1949, were pending until 1950. Henry D. O'Connor, Esq., 601 Widener Building, Philadelphia, Pa., for the petitioners. William G. Handfield, Esq., for the respondent. BAAR
Memorandum Findings of Fact and Opinion BAAR, Judge: The respondent determined a deficiency of $2,233.02 in the income tax of the petitioners for the taxable year 1948, solely upon the ground that the distributive share of the partnership income from Templin Motors as reported on the return should be increased by $6,500. The only issue presented for our decision is whether the respondent erred in disallowing deductions of this amount claimed by the partnership on the ground that two automobile dealer franchises became worthless during the year 1948. Findings of Fact The petitioners resided during the calendar year 1948 at 2314 49th Street, Pennsauken, New *125 Jersey. They filed their joint income tax return for that year with the collector of internal revenue for the first district of New Jersey. Robert Templin, hereinafter referred to as the petitioner, Olive Templin, his wife, and their three sons, John, Joseph and Arthur, doing business as Templin Motors, a partnership, were engaged in 1948 in the business of buying and selling automobiles at 1388 Haddon Avenue, Camden, New Jersey. Robert J. Templin was the sole proprietor of the business of Templin Motors in 1946 and 1947. An agreement dated October 26, 1946, was made between Robert J. Templin, described as "dealer," and Bobbi Motor Car Sales Corporation of New York, described as "distributor." For a recited consideration of $2,500, payable immediately, the petitioner acquired the exclusive right to sell in Camden County, New Jersey, automobiles and parts to be manufactured by Bobbi Motor Car Corporation, described as "the manufacturer." By 1948 this contract had been acquired by the partnership. This agreement recited: "11. It is understood by the Dealer that Bobbi Motor Car Corporation, the manufacturer, is a new company and that its automobiles and products are still in *126 an experimental state; that the payment made by Dealer to secure this dealership is absolute and unconditional; and that neither the Distributor nor any representative is authorized to make or has made any representations or guarantees as to when the manufacturer will be able to begin deliveries of automobiles and parts. * * * "12. This contract expires five years from delivery date of first production car to the Dealer." In 1946, prior to entering into the said agreement, the petitioner made a trip to Birmingham, Alabama, and inspected the plant and equipment of Bobbi Motor Car Corporation, hereinafter called "Bobbi." It then appeared that preparations for the production of automobiles were being made. In November 1948 in order to discover, if possible, the reason why deliveries of automobiles had not been made as anticipated, the petitioner made a visit to the plant of the Keller Motors Corporation, at Huntsville, Alabama. That corporation, hereinafter called "Keller," had purchased on November 25, 1947, the entire assets of Dixie Motor Car Corporation, which in August 1947 had purchased the principal assets of Bobbi. Templin Motors at some time not shown acquired a dealer's *127 franchise from Keller. Upon the visit in November 1948, the petitioner discovered that the Keller plant was not in production and was vacant except for a few wooden models of station wagons. In 1948 the partnership wrote off $1,500 as a loss sustained upon the Bobbi contract; of the total amount of $2,500 which had been paid for the franchise, $1,000 had previously been charged off as amortization, $500 in each of the years 1946 and 1947. On February 20, 1950, the petition of Keller Motors Corporation for reorganization under Chapter X of the Bankruptcy Act, upon the ground that the corporation was unable to pay its debts as they matured, and was insolvent, was filed in the District Court of the United States for the Northern District of Alabama. On May 19, 1950, Keller was adjudicated a bankrupt in those proceedings. The franchise represented by the agreement of October 26, 1946, with Bobbi Motor Car Sales Corporation of New York became worthless prior to the taxable year 1948. The franchise contract with Keller Motors Corporation which Templin Motors had during 1948 was not the same franchise for which $2,500 was paid in 1946. The Keller franchise was worthless on or before *128 December 31, 1948. No loss was sustained in 1948 with respect to this contract. In February or March 1948, having heard of the proposed Playboy automobile, the petitioner visited the plant of Playboy Motor Car Corporation at Tonawanda, New York, and saw that it was being set up for the production of automobiles. In June of 1948, with his sons, he saw in New York City a display of 12 to 14 bodies of Playboy automobiles, in different stages of construction. On or about June 28, 1948, an agreement so dated was made between "John F. Templin, D/B/A Templin Motors" therein referred to as "Dealer," and Playboy Motor Car Corporation, referred to as "Playboy," granting a five-year dealer franchise for the sale of Playboy automobiles, parts and accessories, which apparently were to be manufactured by the contracting corporation. The stated consideration for this contract was $5,000, payable $1,000 at once and $1,000 upon each of four notes, due respectively on July 7, August 7, September 7 and October 7, 1948. Said amount of $5,000 was paid for said contract. The agreement recited: "Dealer understands that the sum so paid is not to be retained in any special refund or contingent account *129 but will be used by Playboy in the conduct of its business as part of its general funds for capital or operating expenses." This agreement further provided, in paragraph Seventeen, that it was terminable by the dealer at any time upon 90 days' notice and that: "Neither party shall be liable to the other for damages of any kind or nature whatsoever on account of the termination of this agreement for any reason, * * * Termination of this agreement by either party shall not obligate Playboy to repay to Dealer any part of the sum paid by it to Playboy under paragraph Six (a) hereof; provided, however, that in the event that Playboy should terminate this agreement because of Dealer's failure to comply with the provisions of paragraph Five [apparently should refer to paragraph Four, relating to maintenance of place of business and adequate stocks, etc.] or paragraph Sixteen [relating to development of sales area, etc.] hereof, Playboy shall repay Dealer the sum paid by Dealer to Playboy under paragraph Six (a) hereof. * * *" Deliveries of Playboy automobiles under the said contract were to be made in June or July and at least 30 a month were to be delivered in and after August. *130 None were delivered in spite of telephone calls and letters. In October 1948 the petitioner again visited the plant at Tonawanda. He then found that it was empty, with no signs of any activity. Theformer showroom was closed and no sample cars were on display. He was unable to obtain any information. On April 14, 1949, the petition of Playboy Motor Car Corporation for reorganization under Chapter X of the Bankruptcy Act was filed in the District Court of the United States for the Western District of New York. This petition alleged that the petitioner was unable to pay its debts as they matured, that its liabilities as of December 31, 1948, amounted to $411,647.78, and that it had assets with an aggregate fair value in excess of $500,000. It was further alleged that the true value of its assets was not readily realizable and that a forced sale would bring substantially less than its total liabilities. This petition further alleged that a public offering of 2,000,000 shares of the capital stock of Playboy was to have commenced on or about March 30, 1949, but no sales were made because it was concluded that, because of market conditions and other factors affecting automobile securities, *131 not enough stock would be sold within a reasonable time to realize sufficient funds to permit the corporation to engage in commercial production. In these proceedings a claim for an indebtedness of $5,000 on account of the franchise contract above described was filed August 4, 1949, by Joseph Templin on behalf of a co-partnership, said to be composed of Joseph Templin and John F. Templin. Said co-partnership was not named in the claim but was designated as Templin Motors in an unexecuted acknowledgment. On January 12, 1950, pursuant to the said petition the Court entered an "Order Approving and Confirming Plan" and finding that the Playboy Motor Car Corporation was insolvent. This order recited, among other matters: - that it had been determined that dealers and distributors holding Playboy franchises and applicants for Playboy franchises were not creditors of the corporation; - that an aggregate amount of $780,147.82 of general claims had been filed; - that pursuant to an order of the Court for a public sale of the physical assets of the debtor, piecemeal bids amounted to less than $41,000 and the bulk bid amounted to $45,000, and that such assets were therefore sold to the *132 proponents of the reorganization plan for the amount of their guaranteed net bid of $50,000. The franchise contract with Playboy Motor Car Corporation became worthless during 1948. During that year the corporation ceased its preparations for the production of automobiles and on or before December 31 its financial condition was such that there was no ground for reasonable expectation that automobiles would ever be delivered for sale pursuant to the franchise. A loss of $5,000, equal to the cost of the Playboy contract, was sustained by the partnership in 1948. Opinion The respondent's addition of $6,500 to the net income of the petitioners for the calendar year 1948, as an increased distributive share of partnership income, is challenged on the ground that it represents the erroneous disallowance of deductible losses of that amount sustained during that taxable year with respect to certain dealer franchises to sell automobiles. One of these franchises related to the products of the Bobbi Motor Car Corporation (herein called "Bobbi") or the Keller Motors Corporation (herein called "Keller") The other related to the Playboy Motor Car Corporation (herein called "Playboy"). *133 For the purposes of this decision we accept the assumptions of the parties that there is here presented solely the question whether such losses were sustained by the partnership in 1948 and that, if so, they are properly deductible by these petitioners. It is clear that the agreements in question did not create any indebtedness, and that there is therefore no foundation for the petitioner's alternative contention that the amounts invested were deductible as bad debts. The deductions are allowable only if the claimed losses were sustained in a trade or business in 1948, within the provisions of section 23 (e) (1) of the Internal Revenue Code and section 29.23(e)(1) of Regulations 111. Such losses were sustained if the contracts in question became worthless during the taxable year. The test of worthlessness for this purpose is a practical one, which takes into consideration all of the various factors bearing on value or the lack of value at a given time. Lucas v. American Code Co., Inc., 280 U.S. 445 (1930). As stated by the regulations cited above, such losses must be evidenced by closed transactions and fixed by identifiable events. No deduction *134 is permitted for a mere fluctuation in value. United States v. White Dental Mfg. Co., 274 U.S. 398 (1927). The present differences between the parties involve the application of these recognized requirements. The petitioner's claim that both of the franchises in question became worthless in the taxable year 1948 is predicated upon what he observed upon his visits in 1948 to the Keller plant in Huntsville, Alabama, and to the Playboy plant in Tonawanda, New York. In each case the petitioner found that production or preparations for production had apparently ceased and that the plants were idle and seemed to be deserted. By these observations the petitioner first ascertained that each of the franchises was worthless; however, the criterion for determining the deduction of losses is not ascertainment but the fact of actual worthlessness. Paul Cavanaugh, 42 B.T.A. 1037 (1940), aff'd (C.A. 9, 1942) 125 Fed. (2d) 366. Even with respect to deductions for bad debts, the previous significance of ascertainment of worthlessness has been removed for taxable years beginning after December 31, 1938, by section 124 of the Revenue Act of 1942, amending *135 section 23(k) of the Internal Revenue Code. Thus the fact that the petitioner first ascertained in 1948 that the Bobbi franchise was worthless is not decisive that a loss was then sustained and is deductible for that year. The conditions which the petitioner found to exist upon his visit to the Keller plant in 1948 may well have existed in 1947, and if so would have been just as persuasive that the franchise was worthless in 1947 as that it was worthless in 1948. That it was actually worthless in 1947 is clearly indicated by other evidence in the record. The agreement with respect to the Bobbi car had to do only with cars to be manufactured by the Bobbi Motor Car Corporation, an Alabama corporation. Yet in August 1947 that corporation sold substantially all its operating assets to a newly organized corporation, the Dixie Motor Car Corporation, and terminated its activities in preparation for the production of automobiles. It does not appear that the petitioner's franchise was in any way assumed or adopted by the Dixie Corporation, or that its performance was in any way assured by the New York sales corporation or distributor with which the contract had been *136 made. It therefore must be concluded that before the end of 1947 there could no longer exist any reasonable expectation that Templin Motors would obtain any cars for sale under the Bobbi franchise and the franchise then became worthless. There is no evidence to support a finding that it became worthless in 1948. It is not material that the record contains no evidence concerning the continued existence or solvency of Bobbi Motor Car Sales Corporation of New York, the party to the 1946 agreement. The ability of this corporation to perform its agreement has no bearing upon the present question, since it had assumed no obligation other than to sell and deliver automobiles and parts when produced by the manufacturing corporation. The evidence that the manufacturing corporation had abandoned its plant and its productive activities in 1947 (even though there is evidence that it continued in existence until October 1949) sufficiently establishes that the contract was entirely without value prior to the year 1948. The Keller Motors Corporation, which on November 25, 1947, purchased the entire assets of Dixie Motor Car Corporation, including those which Dixie had acquired from Bobbi, offered *137 dealer franchises to all dealers holding Bobbi franchises, and one was acquired by the petitioner's partnership, Templin Motors. This franchise, however, can not be regarded as the basis of any deductible loss in 1948, either as a substitution for the Bobbi franchise or otherwise. While both parties refer to Keller as the "successor" to Bobbi, theevidence makes clear that the two corporations were in no sense identical. There is no ground for inferring that the petitioner's contract with a New York sales corporation, a distributor, was in any way assumed or adopted by Keller. There is no evidence that the Bobbi contract was transferred to Keller in exchange for the new franchise, or that any money, property or other consideration was given by the petitioner or his partnership to acquire the Keller franchise. It is not shown that it represented for income tax purposes any cost or basis, or that its worthlessness could result in any deductible loss at any time. It is therefore entirely irrelevant to this case that a petition for reorganization under the Bankruptcy Act was filed by Keller in 1950. In 1948 production of the Playboy automobile had ceased and on December 31 of that year *138 the Playboy Motor Car Corporation's financial condition was such that it could reasonably have been anticipated that the corporation would never manufacture any automobiles for delivery to the petitioner within the five-year period during which the petitioner's franchise would continue. The respondent argues that Playboy franchise did not become worthless until the conclusion of the reorganization proceedings of the Playboy Motor Car Corporation, and the determination by the District Court of the United States for the Western District of New York that the petitioner was not a creditor of that company. In other words, the respondent argues that no identifiable event occurred until 1950 and until that time the Playboy franchise retained some potential value. We find, however, that the franchise became worthless in 1948, when all reasonable prospects of the delivery of Playboy automobiles were terminated. In such a situation the law does not require that the loss deduction be postponed until such ultimate identifiable events as bankruptcy, liquidation, receivership or reorganization. Atlantic Coast Line Railroad Co., 4 T.C. 140 (1944); cf. Boehm v. Commissioner, (C.A. 2, 1945) 146 Fed. (2d) 553, *139 affd. 326 U.S. 237 (1946). This rule is particularly applicable in a case such as this, where the petitioner had no interest in the Playboy Motor Car Corporation as a creditor or equitable owner. In 1948 it was hardly conceivable that any outcome of the bankruptcy or reorganization proceedings would restore the value of the petitioner's franchise or would result in any recovery of any part of the amounts expended to acquire it. This is not a situation where the loss depends upon the insolvency of the manufacturer, as would be the case if a security was claimed to be worthless. Consequently the bankruptcy proceedings do not have the significance attributed to them by the respondent. Whether or not the creditors would ultimately be paid, in the course of a liquidation or reorganization in bankruptcy, was only of secondary interest to this petitioner. He was primarily concerned with the prospect of receiving automobiles to be sold. He had made a substantial investment in order to be in the position of receiving such delivery of automobiles. As soon as it became apparent to a person experienced in this business that the prospects for the production of automobiles had terminated *140 or were threatened with termination, no other dealer would have purchased the petitioner's franchise or a sunilar franchise. As soon as that condition existed the franchise which he had purchased ceased to have any value, to him or to any one else. We conclude, therefore, that the Playboy franchise became worthless during the taxable year 1948, and that the petitioner then sustained a loss for which he is entitled to a deduction in that taxable year. Decision will be entered under Rule 50.