PAUL CAVANAGH (ALSO KNOWN AS WILLIAM G. ATKINSON), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95500. Promulgated October 22, 1940.

*Henry Grivi, Esq.,* and *Irving Lesser, C. P. A.,* for the petitioner. *Edward H. Mitchell, Esq.,* and *Byron M. Coon, Esq.,* for the respondent.

1040

**OPINION.**

KERN: Two issues are presented in this proceeding—(1) the question of a deduction for a "bad debt" and (2) whether petitioner must report his entire California income as his own.

On the first issue, in our findings of fact we have concluded that the transaction between the petitioner and Pauly was not a loan, but an investment on the part of petitioner. Although the petitioner testified that Pauly had asked for the money as a loan, it is apparent and admitted by the petitioner that the details and nature of the transaction are very hazy in his mind. In view of the written agreement between the two, we conclude that the transaction was an investment. Consequently, petitioner can not take the deduction as a bad debt, deductible in the year in which it was ascertained by petitioner to be worthless and charged off, but only as a loss pursuant to the provisions of section 23 (e), which requires that it be sustained during the taxable year.

The petitioner surmised in the taxable year that nothing could be realized on the transaction, but the record does not prove that he could not realize his initial investment, there being no evidence that Pauly had irrevocably dissipated the funds invested by petitioner or was unable to account for them. However, assuming that petitioner's investment was lost, there is not a scintilla of evidence that this loss was sustained during the taxable year, rather than during the years 1934 or 1936. The burden is upon the petitioner to establish this fact, in view of respondent's determination. The petitioner has not sustained this burden of proof, and, consequently, the first issue must be resolved in favor of respondent.

There remains the issue of whether petitioner must report as his income the total amount of his salary earned in California. Petitioner, though not an American citizen, was a resident of the State of California throughout the taxable year 1935, and we have found that he was domiciled in that state. The avowed intention of the petitioner to remain in California fulfills the requirement which, in addition to residence, provides the basis for a finding of domicile. *Chambers* v. *Hathaway*, 187 Cal. 104; 200 Pac. 931; *Joe May*, 39

B. T. A. 946; and *Herbert Marshall*, 41 B. T. A. 1064. Respondent contends that, notwithstanding the husband's domicile, the community property statutes can be applied to his property only if California is also the marital domicile.

An examination of the *Marshall* case, *supra*, discloses that the actual residing of husband and wife together within the state and their joint intent to make that residence permanent are not necessary in order to bring the husband within the provisions of the California community property laws. In that case the facts recite that the wife joined her husband in California in February 1934, accompanied by their baby daughter, and the couple lived together as man and wife in a rented house. Motion pictures did not appeal to the wife and she was anxious to resume her career on the English stage. By reason of the diverse interest of the parties an estrangement sprang up between them and, without protest on the part of the husband, the wife returned to England in April 1934, where she lived until the midsummer of 1939. The parties did not live together as man and wife after April 1934. Up to the date of the hearing there had been no divorce and no property settlement between the parties. The Board, in its opinion, said:

We are of the opinion that the earnings of the petitioner [the husband] during the taxable years 1934 *and 1935* constituted community property, upon the ground that he was a married man and domiciled in the State of California. His wife had not technically deserted him during these years. Section 52 of the California Political Code provides: "5. The residence of the husband is the residence of the wife." It must be held that the petitioner *and his wife* were legally *domiciled* in California during 1934 *and 1935*, and that the earnings of the petitioner constituted community property. [Emphasis ours.]

In the instant case there have been no court proceedings instituted for divorce, separation, or property settlement. Neither can the wife be said to have deserted her husband. There is no evidence that he ever asked her to live with him in California. Under these circumstances the general common law rule that the wife's domicile follows that of her husband is applicable. It is a legal fiction, but California has followed that rule. *Wickes' Estate*, 128 Cal. 270; 60 Pac. 867 (1900). And this is true even though the wife has never lived with the husband. Cf. *Kashaw v. Kashaw*, 3 Cal. 312 (1853).

Thus, even though the wife never entered the State of California in her life, we must conclude that she was domiciled therein and can thus avail herself of the benefits of the community property statutes.

Respondent argues that, even if the salary in question be deemed community property, the wife's interest therein is not sufficient to allow the husband to report only one-half thereof as his earnings. Undoubtedly, this contention is true as to any community earnings

acquired before section 161a[1] took effect in 1927. Cf. *United States* v. *Robbins*, 269 U. S. 315, and *Myran* v. *Smith*, 4 Pac. (2d) 219. However, in 1931 the Supreme Court, in the case of *United States* v. *Malcolm*, 282 U. S. 792, clearly showed that the 1927 amendment had worked a drastic change in the California law. In that case two questions were certified from the Circuit Court of Appeals for the Ninth Circuit. The second of these questions was as follows:

2. Has the wife under § 161 (a) of the Civil Code of California such an interest in the community income that she should separately report and pay tax on one-half of such income?

The answer, *per curiam*, was "Yes", citing *Poe* v. *Seaborn*, 282 U. S. 101; *Goodell* v. *Koch*, 282 U. S. 118; and *Hopkins* v. *Bacon*, 282 U. S. 122, which interpreted the community property laws of Washington, Arizona, and Texas, and held that the taxation of community income to the husband alone was improper.

The only fair inference from this opinion is that the interest of the wife under the California community property laws is of such a vested nature that one-half of the earnings of the community can be attributed to her.

The fact that under the California law the husband has a broad power of control does not detract from the wife's interest. This power is conferred upon him merely as the agent of the community and does not make him the owner of all the community property and income, nor negative the wife's present interest there as equal coowner. Cf. *Poe* v. *Seaborn*, *supra*, where the Supreme Court so held as to an analagous section of the Washington community property laws.

In the case of *Gillis* v. *Welch*, 80 Fed. (2d) 165 (1935), the Circuit Court of Appeals for the Ninth Circuit went so far as to declare that the wife had a definitely vested interest in community property. This was said by way of dictum in a footnote:

[1] In 1927 an amendment to the Civil Code of California (section 161a) provided that the wife was to have a vested interest in the community property equal to that of the husband, although he was still left with the possession and control thereof.

Gross income, as defined in section 22 (a) of the Revenue Act of 1934, 48 Stat. 680, ch. 277, includes "income derived from * * * dealings in property, whether real or personal, growing out of the

---

[1] *Civil Code of California.*—

Sec. 161a. *Interests in community property.* The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property. [Added by Stats. 1927, p. 484.] * * *

ownership or * * * interest in such property, * * * or gains or profits and income derived from any source whatever * * *." Such income must be reported by the individual to whom the statute attributes it. Clearly, therefore, the petitioner's wife is taxable on one-half of the community income. She is the owner thereof, although not entitled to present possession. This appears to be the inescapable conclusion to be drawn from the Supreme Court's opinion in the *Malcolm* case, *supra*.

Consequently, there is no longer the situation whereunder the wife may at her option return one-half of the income. Since she now must do so, it follows that the petitioner is taxable only on the other half of the entire community property. Therefore, as to the second issue in this proceeding the Board holds in favor of the petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.

---

MELLOTT, dissenting: The basic and fundamental purpose of the community property law is to afford a modicum of protection to the wife, domiciled in the state. We should, therefore, in passing upon what amounts to a belated claim by this petitioner that one-half of his income should be exempted from tax, require that he establish, by a preponderance of the evidence, that his wife was domiciled in the State of California during the taxable year.

The only evidence upon which a conclusion can be based is the testimony of petitioner. He stated that in 1922 he and his wife separated; that the last place they lived together was in Edmonton, in the Province of Alberta; that after the separation he continued to live in Edmonton and the wife went to Toronto in the Province of Ontario; and that he and his wife had "never been domiciled together in the United States in any of its 48 states." In response to a question as to where his wife was living at the time of the hearing he stated: "Well, I think she is in Toronto." Upon cross-examination he stated that at the time of his marriage it was the intention of his wife and himself that a home be maintained in Alberta, Canada, and that neither, at that time, had any intention of establishing a home in any other locality. When asked whether he and his wife had ever changed that intention he replied, "No."

After his wife left him in 1922 he remained in Alberta and continued to vote there at elections, leaving Alberta in 1924 or 1925 when he went to England. He did not consult with his wife about his trip to England, nor did he consult with her about his trip to the United States in 1929. When asked whether the separation, which had taken place in 1922, was temporary or permanent he stated: "It

was pretty permanent." He elaborated this answer by stating: "Although it was not—I mean you could hardly call it official until probably, I think, 1928 or 1929." Counsel then asked him to explain the word official, to which he responded: "Well, it was a silly word to use. I really meant that it was perhaps more definitely understood."

In the prevailing opinion it is stated that the wife can not be said to have deserted her husband. This is the caveat upon which the conclusion is predicated that her domicile during the taxable year was "that of her husband." The conclusion might be sound if the parties had been united in marriage in California, if they had lived together as husband and wife within that state, or if they had been living together elsewhere when the husband decided to change the "matrimonial domicile" and the wife had refused to accompany him to the new state. But it is not an absolute rule of law that the wife can not, when necessary, establish her own domicile. Cf. *Cheever* v. *Wilson*, 9 Wall. 108; *Haddock* v. *Haddock*, 201 U. S. 562; and *Watertown* v. *Greaves*, 112 Fed. 183. The California statutes give her the right to do so when she desires to institute an action for divorce. (Sec. 129, Civil Code of California, 1933. Deering.) But the statute is an enabling act; and it should not be construed as preventing the wife from acquiring a separate domicile, when necessary. In the case cited by the majority (*Wickes' Estate*, 128 Cal. 270; 60 Pac. 867) the soundness of the rule enunciated by Mr. Justice Swayne in *Cheever* v. *Wilson*, *supra* — "[The wife] may acquire a separate domicile whenever it is necessary or proper for her to do so"—is recognized, the court saying: "Supposing this rule to apply to a domicile for other purposes than divorce, this case is still not within it."

But, leaving for the moment the California statutes and decisions, it seems to be clear that the wife—assuming, as the prevailing opinion holds, that she had not deserted her husband—had actually established a separate domicile.

In Restatement of the Law—Conflict of Laws—pp. 51, 52, it is said:

Par. 28. DOMICILE OF WIFE LIVING APART FROM HUSBAND. If a wife lives apart from her husband without being guilty of desertion according to the law of the state which was their domicile at the time of separation, she can have a separate domicile.

Under "Comment" it is said:

If a wife lives apart from her husband without being guilty of desertion, she can retain her domicile, although he changes his domicile.

When the wife left the husband in 1922 in Edmonton in the Province of Alberta and went to live in the Province of Ontario, it is obvious that she was endeavoring to establish a domicile separate from his domicile. If we accept the view of the majority, then her domicile

has, since 1922, been Toronto. If, on the other hand, it be held that the wife was guilty of desertion when she left her husband in 1922— (see definitions, sec. 95 *et seq.* Civil Code of California 1933 Deering)—surely he ought not be penalized to the extent of being required to give her half of his earnings merely because he took up a temporary abode in Hollywood! The California statutes provide otherwise. See sec. 175, Civil Code 1933.

The instant proceeding presents an anomalous situation to say the least. Petitioner, according to his own sworn testimony, gave his wife no part of his California earnings and never even asked her to share "the place or mode of living selected by" him. (Secs. 103, 104, and 156 Civil Code, *supra.*) He did not even advise her as to the amount of his earnings. Yet, says he, the Government should look to her for half the tax. If that be so—though I do not believe that it is—then petitioner by his own admissions has shown himself to be liable not only for the tax, as a withholding agent under the provisions of sections 143 and 211 *et seq.* of the Revenue Act of 1934, but also for the interest and penalties. (Sec. 143 (c), Revenue Act of 1934.)

Being of the opinion that the Commissioner's determination should be upheld, I respectfully note my dissent.

SMITH, TURNER, and OPPER agree with this dissent.