## COMMISSIONER OF INTERNAL REVENUE v. CAVANAGH.

### No. 9840.

Circuit Court of Appeals, Ninth Circuit.

Jan. 28, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Helen R. Carloss, Joseph M. Jones, and Lee A. Jackson, Sp. Assts. to the Atty. Gen., for petitioner.

Henry Grivi, of Los Angeles, Cal., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The Commissioner of Internal Revenue found a deficiency in the tax of Cavanagh for the tax year of 1935 and the Board of Tax Appeals found an overpayment. The Commissioner appeals. The principal divergent conclusions spring from a difference of opinion as to the property status of income earned. Taxpayer reported one-half of his income upon the basis of its being community property and in this the Commissioner is not agreed, but the Board is agreed and so are we. There was a detailed recomputation upon facts which are not relevant to the problem here.

The taxpayer, whose real name is William G. Atkinson, but who is known by his stage name, Paul Cavanagh, and his wife, are British subjects. He was married in 1914 in Edmonton, Alberta, Canada, and he and his wife separated in 1922, the wife going to Toronto to live, never returning to Alberta. Cavanagh came to the United States in June 1929 on a visitor's permit, staying in New York at that time. In 1929 the wife also came to New York for a few days, her only visit to the United States. During this stay in New York the taxpayer upon the wife's request signed a power of attorney in her favor, the pertinent sections of which follow:

"Know all Men by These Presents, that I William G. Atkinson, an actor, professionally known as Paul Cavanagh, residing in the Borough of Manhattan, New York City, State of New York, United States of America, do hereby irrevocably constitute and appoint E. Jean Atkinson, residing in the City of Toronto, Dominion of Canada, my true and lawful attorney for me and in my name.

"(a) To demand, receive, and collect all claims, debts, moneys, and demands whatsoever, up to and including the sum of $50. per week (but not in excess thereof for any one week) now due and which may hereafter become due to me on any contract of employment, express or implied, to which I am now, or shall hereafter be a party, and to make, execute, and deliver proper receipts, releases, or other discharges or acquittances for the same, under seal or otherwise; * * *

    \*    \*    \*    \*    \*

" * * * Acceptance of an action under this power of attorney shall not prejudice

any existing or future rights of E. Jean Atkinson in respect to alimony, support, maintenance or any other right whatsoever."

Taxpayer remained in New York for four or five months in 1929,. returning to England, but later in that year came to California and remained until September 1931, when again he returned to England. He re-entered the United States in November 1931 on a visitor's permit. In April 1932 he went to Mexicali and obtained a quota number from England, intending to become a citizen, and remained in California until January 1936 under the quota number authority. From April 1932 until January 1936 he worked as a motion picture actor in California, but has never taken out citizenship papers.

In 1935, the taxable year in question, taxpayer was living in Beverly Hills, California and resided at the time of the hearing in the home of friends.

Taxpayer never asked his wife to come to California and live with him, nor did she ever indicate a willingness to do so. After execution of the power of attorney, the wife never made any demands upon the taxpayer for any portion of his income derived from sources in California, nor did she ever file an income tax return in California. During the taxable year in question she was a resident of Canada, and he was domiciled in California.

The Commissioner contends that on this state of facts, the parties were not living under the community property laws of California, and that the earnings of the taxpayer were therefore not community property. He makes two main points: (1) That the marital domicile of the parties must be California before the community property statutes of that state apply to their property; that a wife without fault can acquire a domicile separate from that of her husband, and that the wife herein did so acquire a separate domicile, and therefore the community property statutes do not apply. (2) That in any event the

power of attorney amounted to an agreement destroying any possible community status of property, particularly in light of the voluntary separation of the parties which the Commissioner contends was in effect the same as a formal divorce and thus destroyed any possible community status.

■ The law is not with the Commissioner on either of the above contentions. The husband's earnings after marriage while domiciled in California are community property, Civil Code, § 164,[1] and residence of the wife is not required, Beemer v. Roher, 1934, 137 Cal.App. 293, 30 P.2d 547, and Hiltbrand v. Hiltbrand, 1936, 13 Cal.App.2d 330, 56 P.2d 1292, the wife's interest in her husband's income being determined by the law of domicile where earned and not by the law of, matrimonial domicile. Blumenthal v. Commissioner of Internal Revenue, 1932, 2 Cir., 60 F.2d 715. The interests of the husband and wife in community property during continuance of the marriage relation are "present, existing and equal interests", Civil Code, § 161a[2]. As such, the wife can separately report and pay tax on one-half of such income. United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Goodell v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247; Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249.

In this regard, it was contended by counsel for the Commissioner, on oral argument, but not in the briefs, that the recent case of Grolemund v. Cafferata, Cal.Sup., 111 P.2d 641, interpreting the nature of the interests of the husband and wife in community property under C.C. § 161a, materially changes the situation from that presented to the Supreme Court in the Malcolm case and that we should not now hold the Malcolm case, supra, as controlling. The Grolemund case in no manner touches the principles leading to the Malcolm decision. It holds, and it holds no more of interest

---

[1] "Property acquired after marriage. All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state is community property; * * *."

[2] "Interests in community property. The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property."

in the instant case, that levy against the community real and personal property of the husband and wife, and sale thereof in satisfaction of a tort judgment obtained against the husband alone is lawful. The decision is based upon the legal fact that the husband has the legal management and control of the community property under the "present, existing and equal" ownership of the wife in the property.

It is true that a wife without fault may acquire a domicile separate from that of her husband for certain purposes, and that her earnings while living separate and apart from her husband are her separate property, Civil Code § 169, but this does not affect the status of the earnings of the husband. They are and in such circumstances remain community property of the spouses.

Of course no voluntary agreement between the parties is sufficient to affect the marital status in such a manner as to impress upon property the status of that of unmarried persons. The law of California permits full contractual settlements of property owned by either of the spouses or by them together, but it needs only a cursory reading of the power of attorney executed by the husband in this case to his wife to be perfectly certain that it does not affect the property interests of the parties other than to give the wife certain rights in the matter of collecting a periodical allowance. In fact it affirmatively provides that (quoting therefrom) "acceptance of an action under this power of attorney shall not prejudice any existing or future rights of E. Jean Atkinson in respect to alimony, support, maintenance or any other right whatsoever."

We conclude that the earnings of the husband in the year 1935, when he was domiciled in the State of California, and when the marriage between the parties was in existence, constitute community property under the laws of California, there being no judicial dissolution of the marriage, nor any agreement changing the community property status of the parties, and that the husband is entitled to make a separate income tax return of only one-half of such income.

We herein intimate no holding regarding the subject of a withholding agent under the Revenue Act of 1934, c. 277, 48 Stat. 680, § 143(b), 26 U.S.C.A. Int.Rev.Acts,

page 719, nor regarding the question of an income tax return by the wife on one-half of the community income for the tax year in issue.

The decision of the Board of Tax Appeals is affirmed.