[Civ. No. 7730. Third Dist. Nov. 25, 1950.]

ELLA ELIZABETH HARROLD, Appellant, v. ELLSWORTH HARROLD, Respondent.

David Livingston and Louis F. DiResta for Appellant.

Devlin & Devlin & Diepenbrock for Respondent.

PEEK, J.—Plaintiff, who was awarded an interlocutory decree of divorce on the ground of extreme cruelty, now challenges the financial provisions of the judgment and in particular the portion thereof providing for alimony and a division of the community property.

The record shows that the parties were married November 26, 1936, and first separated in the fall of 1944, at which time plaintiff instituted an action for separate maintenance and a division of the community property. However, the action did not proceed to trial and in June of the following year the parties entered into a separation agreement which purported to settle all property rights arising out of the marriage and all claims which one might have against the other. Additionally the agreement provided that each relinquished all claims against future earnings of the other and all interests or rights in or to any property thereafter acquired by either. In September, 1945, the parties became reconciled but again separated in March, 1948. Following the last separation plaintiff filed a complaint for divorce which is the basis of the present proceeding. A hearing was had on September 24, 1948, but the interlocutory decree was not entered until February 15, 1949. The trial court found that the agreement of June, 1945, was fair and reasonable; that at the time of reconciliation the parties ratified and confirmed the same as to all past consideration but as to the executive provisions thereof the parties, by their reconciliation, had abandoned the agreement; that the community property of the parties consisted of the residual sum of $1,734.24; that the earnings of defendant commencing September 15, 1945, were earnings of the community and were derived from two certain automobile

enterprises which were defendant's separate property. The court further found that $400 per month for a period of five years was a reasonable sum to be awarded plaintiff as permanent maintenance. From the foregoing findings the court concluded in part that the "provisions as to such payment shall not be hereafter amended, altered either upward or downward by the court or be in any manner, subject to revision hereafter."

Approximately one month after the entry of the interlocutory decree two unpaid bills were discovered. These accounts had been contracted by plaintiff prior to the divorce proceedings but were not cleared in that action. Following an exchange of letters between the attorneys for the litigants the items were paid by respondent. In the letter of transmittal defendant's attorney stated that payment of the items in question, which included the community property awarded to plaintiff, was made "upon the express condition that the litigation stands at an end." Later in the same month appellant addressed a letter to defendant's counsel wherein she informed him that her attorney had turned over to her the file in the case and in reference to the letter above mentioned stated "no one has, or has ever had, any authority from me to terminate this litigation and I intend to take an appeal."

Following the institution of plaintiff's appeal in this court defendant moved to dismiss the same or affirm the judgment on the ground that appellant had availed herself of the judgment in her favor and in addition solicited and received a supplemental consideration upon the express condition that the litigation would stand at an end. Numerous other letters between the attorney, who was then counsel, and respondent were attached to defendant's motion.

▪ While the general rule is, as stated by respondent, that when a judgment has been satisfied it " 'has passed beyond review,' for the satisfaction thereof 'is the last act and end of the proceeding' " (*Klebora* v. *Klebora,* 118 Cal. App. 613 [5 P.2d 965]), however, that rule is subject to various limitations. ▪▪ Here the appeal is only from that portion of the judgment awarding her alimony and from the portion providing for the disposition of the community property. Stated otherwise, it is not from the judgment in her favor but is from that portion of the judgment denying her the full relief demanded. The question thus raised is precisely the same as was presented to the court in *Clarke* v. *Angelus Memorial Association,* 14 Cal.App.2d 750 [58 P.2d

974], and in answer thereto the court stated: "The law is settled that, where the only question on appeal is whether the recovery should be greater than that allowed by the trial court, the acceptance of the amount adjudged due is not inconsistent with the claim that the judgment is not large enough and the appeal may be maintained." But respondent further argues in effect that even if such is the case, the acts of appellant personally in accepting the consideration mentioned and the acts of her counsel as evidenced by his communications, show a waiver or abandonment of the appeal. We cannot agree with such contention.

The applicable section, section 283, subdivision 1 of the Code of Civil Procedure provides that an attorney shall have the authority:

"1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise."

In discussing said section the court, in *Cathcart* v. *Gregory,* 45 Cal.App.2d 179, 187 [113 P.2d 894], stated:

"The evident object of this section [sec. 283, Code Civ. Proc.] is that whenever the attorney shall enter into an agreement for the purpose of binding his client, there shall be *such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record."*

■ Thus, even though an attorney may have the implied authority to waive his client's right of appeal (*Fowlkes* v. *Ingraham,* 81 Cal.App.2d 745 [185 P.2d 379]), a party is not bound by an oral agreement of his counsel to dismiss or abandon his appeal where no agreement or stipulation is entered in the minutes of the court. (*Beckett* v. *City of Paris Dry Goods Co.,* 26 Cal.App.2d 295 [79 P.2d 178]. See, also, *Price* v. *McComish,* 22 Cal.App.2d 92 [70 P.2d 978].)

Since it is our conclusion that the motion to dismiss must be denied we turn then to the questions raised by plaintiff in her appeal.

■ Appellant properly contends that there is no legal basis for the provision in the interlocutory decree which attempts to deprive the court of any future power to modify the judgment with respect to the alimony award. As stated in *Soule* v. *Soule,* 4 Cal.App. 97, 101 [87 P. 205]: "The authority of the court to modify its decree in this respect [alimony] does not depend upon a reservation therefor in the decree itself, but exists by virtue of a statute, and being conferred

upon the legislature, it is beyond its power to divest itself of such authority." This conclusion merely reiterates the applicable statute that the court "may from time to time modify its orders in these respects." (Civ. Code, § 139.) It necessarily follows that since the court cannot divest itself of the authority to modify the decree in this regard appellant cannot claim she has in any way been injured thereby.

■ Appellant next attacks in various ways the court's computation and determination of the amount of community property arising out of the personal efforts of respondent in the conduct of two automobile enterprises which the parties agree to be his separate property.

At the hearing of the case plaintiff introduced as "Plaintiff's Exhibit No. 4" a financial statement prepared by respondent for the years 1945, 1946 and 1947. Present counsel for appellant, who did not represent her at the hearing, now severely criticizes the information contained in said income statement. Specifically it is contended that certain compilations therein set forth prejudice plaintiff's rights in the community property; that the report contains mathematical errors; that the report erroneously charges the community with expenses for a period prior to the reconciliation and that it erroneously charges the community with a pro rata share of the defendant's personal income tax.

Here it should be noted that the record shows that the attacked financial statement was presented to plaintiff at the time defendant's deposition was taken prior to the hearing and was introduced by plaintiff as an exhibit at the hearing. At that time plaintiff's counsel informed the court that to reaudit defendant's books would be prohibitive; that they had examined the statement so submitted to them by defendant, and that they had taken his figures as "gospel." Plaintiff, under such circumstances, having introduced said documentary evidence in support of her contentions, is bound by evidence disclosed therein, and she will not now be allowed to contradict or impeach the same. (*Davenport* v. *Stratton,* 24 Cal.2d 232, 241 [149 P.2d 4].)

■ Appellant further contends that in computing the amount of income to be allocated to the defendant's separate property interest, the court should have allocated the going rate of interest which a well secured long term investment would earn. In support thereof appellant cites and relies strongly upon the case of *Stice* v. *Stice,* 81 Cal.App.2d 792 [185 P.2d 402].

As the trial court observed in its memorandum opinion it is quite apparent from the many and varied situations in the reported cases that in the segregation of income from capital and personal earnings as between the business of one spouse, wholly his own separate property, and the community earnings, no fixed rule can be laid down which would be equitable in all cases. In amplification of such observation as applied to the circumstances present in the instant case the trial court, in referring to the record, stated:

"In the present case it is true that defendant owns practically all of the stock of one corporation, and all in the other, but there is nothing in the case which indicates that these corporations were organized by him for the purpose of trying in any way to secure more of the earnings thereof as separate property than he was entitled to. My recollection is that the incorporation of the two firms was in the year 1946, which was at a time when the parties had resumed their marital relations. There was no reason assigned, nor does any appear, that the incorporation was intended in any way to prejudice the rights of plaintiff. We must assume they were not unfriendly at the time of the incorporation of these two businesses. It is further to be remembered that according to the evidence the salary assigned to defendant was shown to be a very substantial one. While he was the head of the corporation, it also appeared that he had competent men who were able to run the businesses without his direct supervision, and he took time away from the business at different times. During one period he received a salary of $1000 per month from one corporation and $2000 per month from the other corporation. Of course, these salaries were not binding on the state or federal government for taxation purposes, but that question does not affect the matter here involved. It may be, however, that where a definite salary is thus fixed, that sum would be taken as the amount of community property earned by the husband, allocating the rest of the earnings to capital."

Thus, the factual situation presented herein is shown to be quite different from that as disclosed in the Stice case and others relied upon by appellant. The Supreme Court stated in *Huber* v. *Huber*, 27 Cal.2d 784, 792 [167 P.2d 708]: "Where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment." We are convinced from our examination

of the record that the trial court conscientiously endeavored to follow the rule as enunciated in the Huber case and to make an equitable allocation of personal income and community earnings as was warranted under the particular facts and circumstances disclosed in the present case.

■ A further contention of appellant relates to the failure of the court to consider the earnings of defendant from July 31, 1948, the date of the closing of the financial statement introduced by plaintiff as her Exhibit No. 4 to the date of the interlocutory decree and during the period up to the entry of the final decree. (See *Wilson* v. *Wilson*, 76 Cal.App.2d 119 [172 P.2d 568].) A reading of the memorandum opinion of the trial court, as well as the record, leads to the conclusion that the trial court had this question in mind. However, if the court considered the earnings of the defendant subsequent to July 31, 1948, to have been included in the division which the court made of the community property, then the result would be that the respondent would receive more than one-half of the community estate, and hence would be at fatal variance with the provisions of section 146 of the Civil Code.

This gives rise to appellant's next contention, that the trial court erred in dividing the community property equally between the parties. Where a divorce is granted on the ground of extreme cruelty, as here, the nonoffending party is entitled to be awarded more than one-half of the community property. (*Faust* v. *Faust*, 91 Cal.App.2d 304 [204 P.2d 906]; *Arnold* v. *Arnold*, 76 Cal.App.2d 877 [174 P.2d 674], and cases therein cited.) Section 146, subdivision 1 of the Civil Code, provides that where the divorce is granted on the ground of adultery, incurable insanity, or extreme cruelty, the community property shall be assigned "in such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just." In all other cases the community property must be divided equally between the parties. (Civ. Code, § 146, subd. 1.) ■ The inference derived from this code section is that the nonoffending party is entitled to more than one-half of the community property where the divorce is granted on the ground of extreme cruelty. (*Tipton* v. *Tipton*, 209 Cal. 443 [288 P. 65]; *Crouch* v. *Crouch*, 63 Cal.App.2d 747 [147 P.2d 678]; *Quagelli* v. *Quagelli*, 99 Cal.App. 172 [277 P. 1089].)

It is respondent's answer to appellant's contention that appellant is in no way prejudiced by the provisions of the decree relating to community property, since, as he argues,

there was no community and hence nothing to divide. It is argued that the separation agreement of June 30, 1945, which expressly provided that the future earnings of Mr. Harrold were to be his separate property, remained in force notwithstanding the reconciliation of the parties. The trial court adopted a finding on this matter as follows:

"That on or about the 15th day of September, A.D. 1945, the said plaintiff and defendant, by mutual agreement, became reconciled, one with the other, and did resume once again the marital relationship; that said parties did, at the time of said reconciliation thereupon ratify and confirm the said contract as to all past consideration but as to the executory provisions thereof, relating to future earnings, support, attorney's fees, and costs, by said reconciliation, said parties did waive and abandon the same."

This finding is supported by the evidence. Upon resumption of the marital relationship, respondent provided support, and there is no indication that the earnings of respondent were segregated as his separate property, or considered by the parties otherwise than community assets. Reconciliation and a resumption of marital relations cancel the executory provisions of a property settlement agreement. (*Mundt* v. *Connecticut Gen. Life Ins. Co.*, 35 Cal.App.2d 416 [95 P.2d 966], and cases cited therein; 9 Cal.Jur. 827.)

For the foregoing reasons the interlocutory judgment is affirmed, except as to the portion thereof which attempts to limit subsequent modification of the provisions as to the support and maintenance, which provisions are hereby stricken, and as to that portion relating to a division of the community estate, which is remanded to the trial court with instructions to determine the division of the amount of the community estate as indicated herein, rather than that of the closing date of defendant's financial statement introduced by plaintiff.

Adams, P. J., and Van Dyke, J., concurred.