Joan R. Maher v. Commissioner.
Maher v. Commissioner
Docket No. 2091-63.
United States Tax Court
T.C. Memo 1964-173; 1964 Tax Ct. Memo LEXIS 335; 23 T.C.M. (CCH) 1016; T.C.M. (RIA) 64173; June 22, 1964
Robert P. McDonald, for the petitioner. Roger Rhodes, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies and additions to the income tax of petitioner as follows: Additions to Tax,
I.R.C. 1954,
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)
1956
$ 340.68
$ 85.17
$17.03
1957
1,147.93
286.98
57.40
1958
486.00
121.50
24.30 At the hearing *336 respondent conceded the additions to tax under sections 6651(a) and 6653(a) of the Internal Revenue Code of 1954, and petitioner conceded other issues. The only issue remaining for decision is whether petitioner is taxable on her share of community income from her husband's law practice prior to June 4, 1958, the date of a property settlement agreement whereby the husband agreed to pay all taxes due by either party. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by this reference. Joan R. Maher, the petitioner herein, and Francis J. Maher (hereinafter sometimes referred to as Maher) were married in New York City, New York, on March 30, 1943. Since November 1947, they have been domiciled in the State of California, residing in San Diego, California. Francis Maher is a lawyer who was admitted to the Bar of the State of New York in 1937 and to the State Bar of California in 1947. He has been engaged in the general practice of law in San Diego, California, since 1951. Petitioner filed a complaint for divorce in the Superior Court of the State of California, County of San Diego, on June 4, 1958. A hearing *337 was held on June 9, 1958, at which time the Superior Court entered its interlocutory judgment of divorce which provided, in part, that a property settlement agreement dated June 4, 1958, was incorporated as part of such judgment. A final decree of divorce was entered on June 10, 1959, without change in the provisions of the interlocutory judgment. During the property settlement negotiations, petitioner learned that her husband had not filed Federal income tax returns for the years 1956 and 1957. The property settlement agreement that was reached and incorporated in the interlocutory judgment of divorce contains, among others, the following provisions: SECOND: That any and all property acquired by either of the parties hereto from and after the date hereof shall be the sole and separate property of the one so acquiring same, and each of said parties hereby respectively grants to the other all such future acquisitions of property as the sole and separate property of the one so acquiring the same; * * *
NINETEENTH: The wife hereby transfers to the husband as his sole and separate property all of his clothing, together with his personal effects, together with all of her right, *338 title and interest in and to his law practice, including, but not limited to all accounts receivable, assets from cases pending and or cases which may be filed in the future, all furniture and fixtures relative thereto and law books and all other assets of said law practice. The husband assumes all community indebtedness against said law practice. TWENTIETH: The husband hereby agrees to pay all outstanding taxes due and owing by either one of the parties hereto of every kind and character, including, but not limited to income taxes, save and excepting any taxes due upon the real property which was transferred to the wife hereinbefore. As of October 1959, Maher had not filed Federal income tax returns for the calendar years 1956, 1957, and 1958. In October 1959, Howard Best, a special agent of the Internal Revenue Service, began an income tax audit of Maher with respect to such years. No regular books of account had been kept. Best, with the aid of Maher, reconstructed Maher's income from the law practice using a transcript of receipts for the years 1954 through 1958, a transcript of cancelled checks for the years 1956 and 1957, an identification record of bank deposits for the *339 years 1957 and 1958, and a record of receipts and expenditures from clients' files for the years 1954 through 1958. The investigation took place over a period of about six months. The net income from Maher's law practice, determined by Best's investigation, was $5,710.14 for the year 1956, $12,568.72 for the year 1957, and $3,796.74 for the period from January 1, 1958, to June 4, 1958, the effective date of the property settlement agreement. During the course of his investigation Best had occasion to examine the interlocutory judgment of divorce granted to petitioner. Using the schedule of net income prepared by Best as the basis for the income figures, Maher filed in June and July of 1960 separate Federal income tax returns for the years 1956, 1957, and 1958 in which he reported only his community one-half of the income from the law practice for 1956, 1957, and the period from January 1, 1958, to June 4, 1958. Petitioner, a housewife, was unemployed. She filed no returns for such years. The Internal Revenue Service prepared income tax returns for petitioner for the years 1956, 1957, and 1958, which reflected one-half of the net income from Maher's law practice for the years 1956 *340 and 1957 and for the period from January 1, 1958, to June 4, 1958. Respondent subsequently issued a statutory notice of deficiency to petitioner for such years covering her one-half share of the community income of the law practice. Opinion The income in question arose from the law practice of Francis Maher at the time when he was married to petitioner and domiciled in California. Under California law the personal earnings of a husband are community property. Cal. Civ. Code, sec. 164; Harrold v. Harrold, 43 Cal. 2d 77, 271 P. 2d 489 (S.C. 1954); Berry v. Berry, 117 Cal. App. 2d 624, 256 P. 2d 646 (D.C. 1953). The wife's interest in community property in California is a present, existing, and equal interest with that of her husband. Cal. Civ. Code, sec. 161a. For purposes of Federal income taxation, each spouse is equally liable for payment of the tax on his or her respective equal share of the community income. United States v. Malcolm, 282 U.S. 792 (1931); Majorie Hunt, 22 T.C. 228 (1954); and Paul Cavanagh, 42 B.T.A. 1037 (1940), affd. 125 F. 2d 366 (C.A. 9, 1942). Petitioner seeks to circumvent *341 the general rule, whereby she would be taxable on her half of the community earnings of her husband, by arguing that Maher was obligated under the property settlement agreement to report all of the income from his law practice and pay all of the taxes thereon; that the special agent directed him to file a separate return reporting only one-half of the income; that, without such direction, Maher would have reported all the income and paid all the taxes; and that, if the taxes had been paid, the respondent would have been precluded from asserting a deficiency against the petitioner under the rationale of Harrold v. Commissioner, 232 F. 2d 527 (C.A. 9, 1956), reversing 22 T.C. 625 (1954). The record fails to establish that the special agent's actions were improper. It does not appear that he influenced Maher to ignore a contractual obligation. On the contrary, his advice was that if separate returns were to be filed, it would be proper to report only one-half of the community income, "[then] pick up the whole amount from the interlocutory decree." This advice was correct. Maher's obligation pursuant to the property settlement agreement was "to pay all outstanding *342 taxes due and owing by either one of the parties." The obligation, by its wording, recognizes that petitioner might have a separate tax liability and does not obligate Maher to report all of the income. He may still fulfill his obligation by paying the petitioner's deficiencies. Petitioner would have us view this case as if the liability had been paid. The fact is, however, that no tax has been paid on one-half of the community income, and thus the rationale of Harrold v. Commissioner, supra, is not applicable. [1] In that case the Commissioner had received payment of all income taxes due from the taxpayer and her then husband. After a divorce the husband filed a claim for refund for that portion of taxes paid by him representing the wife's share of the tax on community income. With the claim for refund pending, the Commissioner determined a deficiency against the wife for her share of the community income. The Court of Appeals held that the wife and not her husband had actually paid the taxes on her share of community income by having it deducted from her share of community distribution in the divorce court. The court viewed the claim for refund as baseless and "obvious *343 chicanery and fraud on the part of the husband." In the instant case petitioner incurred a separate tax liability for one-half of her husband's earnings at the moment they were earned. It is basic that she and Maher could not by a contract to which the Government was not a party relieve the petitioner of liability which had become fixed. The liability remains that of the petitioner and is unsatisfied. Since the liability has not been paid to the Government by either petitioner or Maher, it is immaterial to a decision here that petitioner's share of the community property received by her may have been reduced by the amount of taxes to be paid by her husband, as was true in the Harrold case. In any event, the evidence fails to establish that petitioner actually received less in the property settlement as the result of the unpaid taxes. [2]
*344 While we have found that petitioner has no grounds upon which to contest the deficiency determination of the respondent, she is certainly not left without a remedy. Cf. McMurrey v. Bryant, 281 S.W. 2d 198 (Tex. Civ. App. 1955), where a wife recovered the amount of a Federal income tax deficiency assessment, which she had paid, from her former husband who was obligated to pay such taxes pursuant to a community property settlement agreement. To reflect concessions by the parties. Decision will be entered under Rule 50. Footnotes
1. Cf. Edith Stokby, 26 T.C. 912↩ (1956), where it was stated that in the Harrold case the Court of Appeals was "obviously moved by unique equitable considerations, and we do not find it necessary here to indicate the extent to which we agree or disagree with the result."
2. There being no regular books of account kept by Maher in his law practice, the income for the periods in question and the taxes due thereon were determined only after an investigation by the special agent which occurred more than a year and a half after the divorce proceedings. Therefore, at the time of the property settlement negotiations, the amount of taxes due was unknown. Furthermore, Maher testified in regard to the tax payment provision: "If you mean that the payment I made to her was lowered because I had to pay the taxes, no * * *."↩