CHARLOETTE J. KIMES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 644–69, 2330–69.   Filed February 22, 1971.

*Richard A. Rattray*, for the petitioner.
*Robert H. Feldman*, for the respondent.

### OPINION

RAUM, *Judge:* The Commissioner determined the following deficiencies in petitioner's income tax:

| Calendar year | Deficiency |
| --- | --- |
| 1962 | $9, 392. 00 |
| 1964 | 5, 213. 70 |
| 1965 | 24, 940. 87 |
| 1966 | 64. 04 |

As the result of concessions by both parties, the only year now in issue is 1965 and the only question remaining for decision is whether petitioner is taxable on $46,792.30, which the Commissioner has determined to represent petitioner's one-half share of 1965 community

income received during 1965 up to the date of an interlocutory decree of divorce. The facts have been stipulated.

Charloette J. Kimes (petitioner) and her former husband, Kenneth K. Kimes, filed joint Federal income tax returns for 1962 and 1964 with the district director of internal revenue at Los Angeles, Calif. Petitioner filed individual Federal income tax returns for 1965 and 1966 with the district director of internal revenue at Los Angeles, Calif. She resided in Santa Ana, Calif., at the time the petitions in this case were filed.

In July of 1963 petitioner sued her husband, Kenneth K. Kimes, for divorce in the Superior Court of the State of California for the County of Orange. He filed a cross-complaint for divorce, and the Superior Court granted an "Order on Order to Show Cause," dated July 24, 1963, which, *inter alia*, awarded custody of the minor children to the husband and required petitioner to remove herself and her personal possessions from the family home. The order also provided for alimony pendente lite and the control of a certain bank account as follows:

(5) [Mr. Kimes] * * * is ordered to pay to [Mrs. Kimes] * * * as alimony pendente lite, for her support, the sum of $850.00 per month on the 15th day of each month, beginning July 15, 1963, and continuing until further order of the court.

(6) [Mrs. Kimes] * * * shall continue in possession of the pass book of the Anaheim Savings & Loan Association, showing a present balance of approximately $7500. She shall have sole use of the funds in that account and [Mr. Kimes] * * * is enjoined from interfering with her use of those funds. However, such funds, if used by her, are to be accounted for by her in the same manner in which the parties will be obligated to account for all property of the parties, and she is specifically enjoined from using said funds for any purposes other than extraordinary medical expenses and costs of litigation.

The order contained no other provisions relating to the property of the spouses, apart from a paragraph authorizing petitioner to continue to have sole use of an automobile then in her possession.

After a lengthy trial, Mr. Kimes was granted an interlocutory judgment of divorce on his cross-complaint on September 13, 1965. The interlocutory decree was entered on September 14, 1965, and provided in part:

1. That plaintiff, Charloette J. Kimes, is not entitled to a divorce from the defendant, Kenneth K. Kimes, upon the allegations of either her original or her amended and supplemental complaint for divorce on file herein.

2. That cross-complainant, Kenneth K. Kimes, is entitled to a divorce from cross-defendant, Charloette J. Kimes, on each of the grounds set forth in the original and amended and supplemental cross-complaint on file herein, to wit, (a) on the ground that since the marriage of the parties, cross-defendant, Charloette J. Kimes, has treated cross-complainant, Kenneth K. Kimes, with extreme cruelty and has wrongfully inflicted upon him grievous mental suf-

fering and (b) on the ground that during the marriage of the parties hereto the cross-defendant, Charloette J. Kimes, committed adultery as alleged and upon the dates specified in the amended and supplemental cross-complaint and in the amendment thereto to conform to proof during the trial herein.

\*　　\*　　\*　　\*　　\*　　\*　　\*

6. That all of the property, real, personal or mixed, in the possession of or standing in the name of either or both of the parties hereto and without regard to the manner in which the title is held is community property of the parties hereto and that said community property of the parties hereto is assigned to the respective parties hereto in such proportions as the Court from all the facts of the case and the condition of the parties hereto deem just, all as hereinafter specifically provided.

7. That the cross-complainant (defendant), Kenneth K. Kimes, is entitled to have assigned to him as his sole and separate property and upon the entry of the Final Judgment herein, he is hereby awarded as his sole and separate property:

[Subparagraphs A through H set forth various items of real property and personal property related thereto. Subparagraphs I through P described various notes, shares of capital stock, and life insurance policies, as well as a partnership interest and a reversionary interest in a trust.]

Q. Accounts in the Anaheim Savings and Loan Association, one of which is in the name of Linda J. Kimes and Charloette J. Kimes and one of which is in the name of Andrew Keith Kimes and Charloette J. Kimes.

R. Savings accounts in United California Bank, one of which is in the name of Linda Jane Kimes and Charloette J. Kimes and one of which is in the name of Andrew Keith Kimes and Charloette J. Kimes.

S. All personal property in his possession, including but not limited to bank accounts and cash.

T. All other community property, real, personal or mixed, of the parties hereto, whether or not herein specifically described, with the exception only of that portion of the community property hereinafter specifically assigned to cross-defendant (plaintiff), Charloette J. Kimes, as her sole and separate property.

8. That the cross-defendant (plaintiff), Charloette J. Kimes is entitled to have assigned to her as her sole and separate property and upon the entry of the Final Judgment herein, she is hereby awarded as her sole and separate property the following specifically described properties only:

A. 1961 Cadillac automobile in her possession \* \* \*

B. Personal property in her possession.

C. Bank accounts in her name alone and cash in her possession.

D. In lieu of her interest in all of the remaining community property of the parties hereto to which the Court finds she is justly entitled from all of the facts of this case and the condition of the parties hereto, $200,000.00 shall be paid to her or for her benefit by the cross-complainant (defendant), Kenneth K. Kimes at the times and in the manner hereinafter set out to wit:

(1) $78,000.00 thereof shall be paid by cross-complainant (defendant), Kenneth K. Kimes, to cross-defendant (plaintiff), Charloette J. Kimes, in monthly installments of $650.00 for a period of 120 months on the 15th day of each month retroactive to August 15, 1965.

(2) $35,000.00 thereof, pursuant to the request of cross-defendant (plaintiff), Charloette J. Kimes, made herein in open court, to be paid by cross-complainant

(defendant), Kenneth K. Kimes, for the benefit of cross-defendant (plaintiff), Charloette J. Kimes, and in payment of sums payable by said cross-defendant (plaintiff), Charloette J. Kimes, to the persons, firms and corporations hereinafter specified * * *

\* \* \* \* \* \* \*

(3) The remaining balance of $87,000.00 thereof shall be paid by cross-complainant (defendant), Kenneth K. Kimes, to or for the benefit of cross-defendant (plaintiff), Charloette J. Kimes, at the times and in the manner hereinafter set out, to wit:

(a) To Hanna & Morton and David A. Thomas, attorneys for cross-defendant (plaintiff), Charloette J. Kimes, $8,701.90, as the balance of the attorneys' fees * * *

(b) To cross-defendant (plaintiff) Charloette J. Kimes, $78,298.10 which sum shall be payable on or before five years from the date of entry of the Final Judgment of Divorce herein.

None of the above specified amounts shall be interest.

\* \* \* \* \* \* \*

10. The cross-complainant (defendant), Kenneth K. Kimes, shall pay and discharge all liabilities of the parties hereto on account of future assessments for income taxes heretofore reported on joint returns of the parties hereto.

11. That when the time required by law shall have expired and after the entry of this Interlocutory Judgment of Divorce, a Final Judgment dissolving the marriage between cross-complainant (defendant), Kenneth K. Kimes, and cross-defendant (plaintiff), Charloette J. Kimes, be entered and at that time the Court shall grant such other and further relief as may be necessary to complete disposition of this action.

On September 16, 1965, petitioner filed in the Superior Court a waiver of all rights to apply for a new trial, her right of appeal, and any right to set aside, modify, or otherwise seek relief from the foregoing decree. The final decree of divorce was granted on September 28, 1965. It incorporated by reference those provisions in the interlocutory decree, among others, relating to the property of the parties.

Petitioner received "alimony" payments amounting to $5,950 from her former husband during 1965, apparently consisting of seven monthly payments of $850 as alimony pendente lite pursuant to the order of July 24, 1963.

Mr. Kimes filed his individual Federal income tax return for 1965 on the basis of the theory that one-half of the community income earned from the beginning of 1965 until the date of the interlocutory decree, less allocable deductions, was taxable to petitioner as her vested interest in their community income and was therefore not taxable to him.

Petitioner reported none of the purported community income on her 1965 return, but she did report $5,950 as alimony received and included it in income on her return. She also reported wages of $960

and a loss of $46,508 on the division of certain property pursuant to her divorce, which produced a net taxable loss on her return of $39,598. In his notice of deficiency, the Commissioner determined that petitioner was taxable on $46,792.30 as her one-half share of community income for the period January 1, 1965, to September 14, 1965. He further determined that she was entitled to itemized deductions of $3,016 representing her share of total community deductions. In addition, the Commissioner determined that petitioner realized capital gain income of $4,594.71 in lieu of the $46,508 loss claimed on her return. However, the parties have subsequently stipulated that petitioner had neither a taxable gain nor a taxable loss on the division of property pursuant to the divorce decree.

The issue for decision is whether petitioner is taxable on a one-half share of income which the Commissioner has determined to be community income received during 1965 and prior to the date the Superior Court entered the interlocutory decree of divorce. There is no dispute with regard to the amount of the income in issue; the only question is whether petitioner is accountable for it. Furthermore, the parties have stipulated that if petitioner is held chargeable with the income in issue, she is not taxable on the $5,950 received as alimony during 1965.

California Civil Code section 164 (1961), now codified in Civil Code section 5110 (1970), provides as follows with respect to property other than that described as separate property:

All other real property situated in this state and all other personal property wherever situated acquired during the marriage by a married person while domiciled in this state is community property * * *

California Civil Code section 161a (1954), now codified in Civil Code section 5105 (1970), defines the interests of husband and wife in community property as follows:

The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property.

See also *Siberell* v. *Siberell*, 214 Cal. 767, 769–770, 7 P. 2d 1003, 1005. Thus, each spouse is treated as the owner of one-half of community income, and is consequently chargeable with one-half of the community income for tax purposes. *United States* v. *Malcolm*, 282 U.S. 792; *Poe* v. *Seaborn*, 282 U.S. 101; *Richard B. Gantt*, 46 T.C. 290, 292–293; *Paul Cavanagh*, 42 B.T.A. 1037, 1043–1044, affirmed 125 F. 2d 366, 368–369 (C.A. 9). In *Marjorie Hunt*, 22 T.C. 228, 230, we stated:

This liability is fixed and definite. It is not a means of splitting income which may be voluntarily chosen or elected to minimize taxes. The wife may not, at her option, return one-half of the community income; she must do so. * * * Her liability for tax ceases only when her interest in the community income ceases.

The time when that interest comes to an end is determined by California law. * * *

Under the California law in effect in 1965, a marriage could be terminated only by the death of one of the spouses or by a final decree of divorce. Cal. Civ. Code sec. 90 (West 1954), now substantially codified in Cal. Civ. Code sec. 4500 (West 1970). An interlocutory decree of divorce, however, could adjudicate the spouses' respective community property rights prior to that time. *Leupe* v. *Leupe*, 21 Cal. 2d 145, 147–150, 130 P. 2d 697, 698–700; *Berry* v. *Berry*, 140 Cal. App. 2d 50, 56–58, 294 P. 2d 757, 762–763; *Fritschi* v. *Teed*, 213 Cal. App. 2d 718, 722–724, 29 Cal. Rptr. 114, 117–119; *Marjorie Hunt*, 22 T.C. 228, 230–231.

Petitioner contends that the Superior Court's interlocutory decree divided the couple's community property on the basis of the property which they owned on December 31, 1964, that consequently her interest in community income was terminated as of that date, and that therefore income received by her husband between January 1, 1965, and September 14, 1965, is not taxable to her. We think that the decree cannot fairly be read in any such manner.[1] In the first place, the decree expressly declared that *all* property "in the possession" or "standing in the name" of either spouse was community property:

6. That all of the property, real, personal or mixed, in the possession of or standing in the name of either or both of the parties hereto and without regard to the manner in which the title is held is community property of the parties hereto and that said community property of the parties hereto is assigned to the respective parties hereto in such proportions as the Court from all the facts of the case and the condition of the parties hereto deem just, all as hereinafter specifically provided.

Secondly, the decree is not by its terms limited in scope to property owned on December 31, 1964. Petitioner urges that all of the properties described by the interlocutory decree correspond to properties de-

[1] Petitioner's argument assumes that the Superior Court was authorized to enter such a decree—i.e., to terminate a wife's interest in community income as of a date prior to the entry of an interlocutory decree of divorce. Although it is unnecessary for us to decide this question, we note that the law of California would seem to point in the opposite direction. See *Mears* v. *Mears*, 201 Cal. App. 2d 408, 412, 20 Cal. Rptr. 214, 217; *See* v. *See*, 64 Cal. 2d 778, 783, 51 Cal. Rptr. 888, 891, 415 P. 2d 776, 779; *Somps* v. *Somps*, 250 Cal. App. 2d 328, 340, 58 Cal. Rptr. 304, 311–312; *Randolph* v. *Randolph*, 118 Cal. App. 2d 584, 585–586, 258 P. 2d 547, 549–550; *Harrold* v. *Harrold*, 100 Cal. App. 2d 601, 608, 224 P. 2d 66, 70–71. Cf. Cal. Civ. Code secs. 161a (West 1954) and 169.2 (1959), now codified in Cal. Civ. Code secs. 5105 and 5119(b) (West 1970). Of course, where divorce is obtained on the ground of adultery, as was the case here, the court may provide for an unequal division of the community property. Cal. Civ. Code sec. 146 (West 1954), repealed by Cal. Stats. 1969, ch. 1608, sec. 3; *Barham* v. *Barham*, 33 Cal. 2d 416, 431, 202 P. 2d 289, 298, but we know of no basis upon which it could retroactively change the character of any asset that had already been received or held as community property.

Also, Cal. Civ. Code sec. 175 (West 1955), repealed by Cal. Stats. 1969, ch. 1608, p. 3313, sec. 3, provided during 1965 that the earnings of a husband who had been "abandoned" by his wife were his separate property. However, petitioner does not contend that this provision applied to Mr. Kimes' 1965 earnings, nor is there any indication in the record that such was the case. Cf. *Polk* v. *Polk*, 228 Cal. App. 2d 763, 773–776, 39 Cal. Rptr. 824, 830–833.

scribed in an exhibit submitted by petitioner and stipulated by the parties to be a copy of a "Report and Financial Statements" of Mr. and Mrs. Kimes, dated December 31, 1964 and prepared by Price Waterhouse & Co.[2] The record indicates otherwise. While the decree does describe certain real and personal property which is included in the financial statement, the decree is not limited to such property. Thus, the decree declared that Mr. Kimes was entitled to:

Q. Accounts in the Anaheim Savings and Loan Association, one of which is in the name of Linda Jane Kimes and Charloette J. Kimes and one of which is in the name of Andrew Keith Kimes and Charloette J. Kimes.

R. Savings accounts in United California Bank, one of which is in the name of Linda Jane Kimes and Charloette J. Kimes and one of which is in the name of Andrew Keith Kimes and Charloette J. Kimes.

S. All personal property in his possession, including but not limited to bank accounts and cash.

T. All other community property, real, personal or mixed, of the parties hereto, whether or not herein specifically described, with the exception only of that portion of the community property hereinafter specifically assigned to cross-defendant (plaintiff), Charloette J. Kimes, as her sole and separate property.

The foregoing paragraphs are clearly not limited to property on hand as of a date prior to entry of the decree. Petitioner contends, however, that other provisions in the decree implicitly include such a limitation. She points out that the decree expressly made Mr. Kimes liable for all taxes due pursuant to tax returns previously filed by the parties, but made no provision with respect to returns which would be filed for 1965. She also emphasizes that the decree awarded petitioner the sum of $200,000 to be paid under a payment schedule which enabled her to be discharged from certain liabilities but which did not provide cash which she could use to pay any Federal income tax due as the result of 1965 community income. Petitioner asks us to infer from the foregoing that the Superior Court intended its division of the community property to be effective as of December 31, 1964, and that it therefore assumed that all of the 1965 income now in issue would be taxed to Mr. Kimes. We think it would be improper to draw such an inference on the basis of the record before us. It is altogether unclear to us what the Superior Court understood to be the parties' respective tax liabilities for 1965 income.[3]

---

[2] The parties' stipulation provides that the use of the Report and Financial Statements "is to be limited to petitioner's attempt to trace the assets and amounts thereof from December 31, 1964 to the date of the interlocutory decree. No stipulation is intended as to the correctness of the information appearing in such statements."

[3] It is not unlikely that the Superior Court simply failed to take into account the question of the spouses' 1965 income tax liabilities. Petitioner and her husband had filed joint returns in the past, and their liability on such returns was, by statute, joint and several. On the other hand, at the time the interlocutory decree was granted, they had yet to file returns with respect to income received in 1965. Thus, at the time the interlocutory decree

In our view, petitioner maintained her one-half interest in the spouses' community income until the date of the interlocutory decree of divorce. The record offers insufficient evidence to justify the conclusion that the interlocutory decree terminated petitioner's interest in community income as of the end of 1964. Indeed, paragraphs 6 and 7(Q) through 7(T) of the decree, quoted above, persuade us that under the Superior Court's decree, her interest continued until September of 1965. It seems clear to us that petitioner was given $200,000 and certain other items of property for her one-half share of the entire community, which consisted of all the property owned by the spouses up to that time. Prior to the decree, there can be no serious question that the income realized was community property when received, whether in 1963, 1964, or the first 7 or 8 months of 1965. If the California Superior Court intended so drastic a result as to convert retroactively the 1965 community income into the separate income of the husband we think it would undoubtedly have so stated in specific and unambiguous terms.[4] To the contrary, it is plain that the court dealt with the property as it was then constitued, and divided it in the manner set forth in the decree. We conclude that the interlocutory decree did not alter petitioner's income tax liability with respect to community income received prior to the entry of the decree.[5]

was entered, the question of the spouses' 1965 income tax liabilities was in far different posture than was the question of their liabilities for prior years. In any event, a probable explanation of the situation is that petitioner's counsel in the divorce proceedings failed to take the problem into account and to attempt to protect her in respect of these taxes, with the consequence that the matter was overlooked by the Superior Court. But that circumstance would hardly justify this Court in misapplying the law. In the typical case where all the community income is received and retained by one spouse, it would be a simple matter for counsel for the other spouse to seek arrangements whereby the one who in fact kept the income would assume the responsibility for payment of taxes thereon. However, since one-half the income belongs legally to each when realized, no such arrangement could release either spouse from liability for Federal taxes; it would merely establish a right either by contract or State court decree to have that liability discharged by the other spouse.

[4] Moreover, even if the State court had attempted any such retroactive conversion of community income into the separate income of one spouse, there may well be a serious question whether such attempt could successfully relieve petitioner of liability for tax in respect of income that legally belonged to her when realized.

[5] Cal. Civ. Code sec. 169.1 (West 1954), now codified in sec. 5119 (West 1970), provides that "After the rendition of a judgment or decree for separate maintenance," the earnings of each spouse are that spouse's separate property. Petitioner has not suggested that the Superior Court's Order on Order to Show Cause in 1963 was a decree for separate maintenance which converted Mr. Kimes' subsequent earnings into his separate property. Nor does the Superior Court's 1963 order purport to be such a decree. Furthermore, the Superior Court's interlocutory decree in 1965, which declared all property in the possession or standing in the name of either spouse to be community property, and petitioner's interpretation of that decree to include earnings accumulated during 1964, conflict with a possible view of the 1963 order as a decree for separate maintenance. Moreover, the 1963 order provided for alimony pendente lite under wholly different provisions of California law, Cal. Civ. Code sec. 137.2 (West 1954), now codified in secs. 4516, 4518, and 4540 (West 1970), which were operative under different circumstances from those contemplated by the separate maintenance provisions. Cf. Cal. Civ. Code secs. 136 and 137 (West 1954), now codified in secs. 4502 and 4503 (West 1970). Under California law separate maintenance and alimony pendente lite are not interchangeable concepts.

Petitioner has also argued that she was not taxable because (1) the interlocutory decree did not grant her any "rights or benefits" in the income received by her husband during 1965 and (2) although she was a cash basis taxpayer, she neither received nor had dominion and control over the income received by her husband in 1965. These arguments are without merit. Under California law, prior to entry of an interlocutory decree of divorce, community income received by the husband is community property regardless of who receives or enjoys the income or property in question. *Somps* v. *Somps*, 250 Cal. App. 2d 328, 340, 58 Cal. Rptr. 304, 311–312. "The character of property as separate or community is determined at the time of its acquisition" and is not dependent upon who enjoys or benefits from that property.[6] *See* v. *See*, 64 Cal. 2d 778, 783, 51 Cal. Rptr. 888, 891, 415 P. 2d 776, 779. Consequently, prior to entry of an interlocutory decree of divorce, a California wife is taxable on one-half of community income received by her husband regardless of the fact that she neither received nor enjoyed the income in question.[7] See *Gilmore* v. *United States*, 290 F. 2d 942, 948–950 (Ct. Cl.), reversed on another issue 372 U.S. 39; *Commissioner* v. *Cavanagh*, 125 F. 2d 366, 368–369 (C.A. 9), affirming 42 B.T.A. 1037, 1043–1044; cf. *Marjorie Hunt*, 22 T.C. 228, 230–232.[8]

---

[6] Moreover, it is by no means clear that petitioner did not have the benefit of at least part of the community income here in controversy. In the division of the spouses' community property she was given $200,000 plus certain other items. The total value of the community property as of the date of the interlocutory decree was not established on this record, and for aught we know, some portion of the 1965 community income may have been acounted for in that division. If she in fact received less than one-half of the total community property, as could be the situation in the case of a divorce on grounds of adultery, there is no basis here for concluding that the property or funds received by her should be allocated exclusively to community property other than the community income realized in 1965 prior to the interlocutory decree.

[7] We take note of *Mitchell* v. *Commissioner*, 430 F. 2d 1 (C.A. 5), reversing 51 T.C. 641, which was not cited by either of the parties. The Supreme Court has already acted favorably on a petition for certiorari therein 403 U.S. 190, which alleged a conflict with *Poe* v. *Seaborn*, 282 U.S. 101 and *United States* v. *Malcolm*, 282 U.S. 792. In any event, however, the opinion of the Court of Appeals in that case appears to turn to a considerable extent upon the peculiarities of Louisiana law, and is *not* controlling in this case which involves California law in respect of which *Marjorie Hunt*, 22 T.C. 228, is in point. See also *Lyta J. Morris*, 25 T.C.M. 1248, 1254.

[8] Petitioner has relied upon *Harrold* v. *Commissioner*, 232 F. 2d 527 (C.A. 9), reversing 22 T.C. 625, and *O'Bryan* v. *Commissioner*, 148 F. 2d 456 (C.A. 9). In *Harrold*, the Ninth Circuit found that a California wife actually had paid the income tax on her share of community income. *O'Bryan* held effective for income tax purposes a separation agreement which extinguished the community character of a husband's *future* earnings. The facts of both cases are thus quite different from those presented here, and we think that neither case supports petitioner's position.

Petitioner has also relied on *Knodle* v. *Warren*, (W.D. Wash., 19 A.F.T.R. 2d 582, 67–1 U.S.T.C. par. 9261), which held that a taxpayer was not liable for income tax on a portion of her husband's income for the period January through May of 1963, while the spouses were separated and "a divorce was pending." The divorce was granted in May 1963. The District Court held the wife not liable for tax on income earned by her husband between January and May on the ground that "the community relationship dissolved when the parties separated in January, 1963." The decision in that case thus rests upon the peculiarities of Washington law, which, it may be noted, were taken into account in Rev. Rul. 68–66, 1968–1 C.B. 33. Accordingly, while the community relationship may dissolve on separation in the State of Washington, it does not in California. See *Commissioner* v. *Cavanagh*, 125 F. 2d 366, 368–369 (C.A. 9), affirming 42 B.T.A. 1037 ; *Marjorie Hunt*, 22 T.C. 228, 232. *Knodle*, therefore, is of little relevance in the circumstances of this case.

We conclude that petitioner is taxable on one-half of the community income received between the beginning of 1965 and the date of the interlocutory decree.

*Decisions will be entered under Rule 50.*